## *In re.* SARAH KENNEDY AND OTHERS.

Sec. 32, Art. II, of the Constitution of 1868, providing for a homestead exemption, and the Act passed in pursuance thereof, are not unconstitutional and void as against contracts existing at the adoption of the Constitution.

Nor are they unconstitutional and void as against the liens of judgments on contracts entered before the adoption of the Constitution.

At the time of the adoption of the Constitution of 1868, South Carolina was bound, as a *State* within the Union, by all the obligations of the Constitution of the United States.

The approval by Congress of the Constitution of 1868 does not give to that Constitution the force and effect of an Act of Congress.

Sec. 32, Art. II, of the Constitution of the State, and the Act passed in pursuance thereof, exempting real property of the debtor, of the value of $1,000, from sale for his debts, are not laws impairing the obligation of contracts, within the Constitutional sense of those terms.

A judgment is not in itself a contract, and it cannot originate rights of the class protected by the Constitution of the United States. Its lien is a mere right of preference as among purchasers and creditors, and is an incident of the remedy not in the contemplation of the contracting parties.

That the debtor died before the adoption of the Constitution does not preclude his family from claiming the homestead exemption allowed by the Constitution and the Act of Assembly.

BEFORE THOMAS, J., AT CHESTER, JANUARY TERM, 1869.

Appeal from the Circuit decree, the case being as follows:

Richard E. Kennedy, late of Chester County, being in his lifetime, and at the time of his death, seized and possessed of a dwelling house and lot in the town of Chester, and two parcels of land near said town, one known as the Robinson place, and the other as the Lee place, departed this life in the year 1855, leaving a widow and several infant children. The widow intermarried with one Sims, and died in 1860. L. C. Hinton administered, with the will annexed, on the estate of the testator, Richard E. Kennedy, and in July, 1863, a decree was rendered against him, as administrator, for $70,000, and upwards. The decree was founded on a contract made

in the year 1839 or 1840. In 1866, the administrator filed a bill in equity against the children of the testator and others, praying, amongst other things, that the entire real estate of the testator be sold for payment of his debts, and in July, 1868, a decree ordering such sale was made, the sale to take place in December then next ensuing. After the decree for sale was made Sarah Kennedy, and others, infant children of the testator, the youngest being fourteen years of age, filed this petition in the Court of Probate for Chester County, praying that a homestead out of the real estate of the testator be set off and assigned to them. Evidence was taken under the petition, and on the 23d of November, 1868, the Judge of Probate made a decree that the Robinson place be set off, and assigned to the petitioners as a homestead. Commissioners were appointed for that purpose, who made a return in conformity with the decree.

James Hemphill, and another, creditors of the testator, appealed to the Circuit Court on the grounds :

1. Because the decree is contrary to both the letter and spirit of the Constitution of this State, in this, that it abstracts the property of testator, *pro tanto*, from the just claims of creditors, whose claims were contracted more than twenty years ago, and in favor of one of whom a lien by judgment and *fi. fa.* had been established more than five years ago.

2. Because the said decree, for the same reasons as stated in the first ground, is contrary to the express letter of the 10th Section of the 1st Article of the Constitution of the United States.

3. Because the said decree is erroneous in deciding that the petitioners are entitled to the homestead exemption, in the property of their ancestor or head of the family, when the said ancestor or head of the family died more than twelve years before the law providing a homestead exemption was passed, and hence never was vested with such right.

4. Because the said decree is erroneous in awarding a homestead to the petitioners in a tract of land, situated at least three miles from the family dwelling or residence, and wholly disconnected with it.

His Honor the presiding Judge overruled the first three grounds of appeal, but held the fourth ground to be well taken. He accordingly made an order modifying the decree of the Probate Court, and directing a new commission to issue, so that a homestead, consisting of the dwelling house, might be assigned to the petitioners.

The appellants below appealed to this Court, and now moved that the decree of the Circuit Judge be reversed on the first three grounds of the appeal to the Circuit Court.

*Hemphill, Patterson,* for appellants.

*Walker & Brice,* contra.

Nov. 30, 1870. The opinion of the Court was delivered by

WILLARD, A. J. Richard E. Kennedy died intestate in 1855, largely indebted, and leaving real estate. A decree was recovered against his administrator by certain of the appellants, in 1863, for a large amount.. The administrator filed his bill in equity in 1866, alleging that the entire real estate of the intestate would be required to pay his indebtedness, and praying that it might be sold for that purpose. At July Term, 1868, the Court, at Chester, made an order for the sale of the real estate. Subsequently to this order, and previous to the day fixed for the sale, Sarah Kennedy, and three others, minors, and children and heirs-at-law of the intestate, presented, by their next friend, their petition to the Judge of Probate, praying that a homestead might be set off and assigned to them out of the said real estate. The Judge of Probate granted the prayer of their petition, and, on appeal to the Circuit Court, this order was affirmed, so far as it established the right of the petitioners to a homestead, but was modified as to the particular designation of such homestead.

The present appeal is by creditors of the intestate, from the decree of the Circuit Court, on the appeal from the Probate Court, and presents for consideration the following questions:

1st. Whether a homestead exemption can be claimed under the Constitution of 1868, and the Act relating to homestead exemptions passed in pursuance thereof, as against contracts existing prior to the adoption of the Constitution.

2d. Whether such homestead exemption can be allowed as against the rights of creditors under the decree against the administrators recovered prior to the adoption of the Constitution.

3d. Whether the death of the ancestor, previous to the adoption of the Constitution, precludes his family from claiming the benefit of the homestead exemptions.

It is contended by the appellants that Art. I, Sec. 10, of the Constitution of the United States, prohibiting the States from passing laws impairing the obligation of contracts, precludes the effect al-

lowed by the decree to the Constitution of this State, and the Act passed under it, in its operation upon their rights now before the Court.

Are these enactments, in their bearing on this case, to be regarded as a law impairing the obligation of contracts, in the sense intended by the Constitution of the United States?

The prohibition is only applicable to the legislation of States. It has been contended that South Carolina was not a State, in the sense of the Constitution, at the adoption of the Constitution in 1868. The Constitution of the United States furnishes no means by which a State may either discharge itself, or be discharged from the obligations imposed upon it by that instrument. Neither the Legislative or Executive authority of the nation have, at any time, recognized any change in the legal obligations of the State, under the Constitution of the United States, as the result of the war or the events following it.

The doctrine contended for is based on the proposition that a State, engaging in an unlawful attempt to throw off its allegiance to the ultimate sovereignty of the people, has power to absolve itself from its legal obligations under the Constitution, to the extent of being able to do, validly, that which the Constitution forbids, and which cannot be done by a State observing its duty of allegiance to the supreme authority. Such a result might be contended for as the consequences of successful revolution, but how it can be claimed as a legal sequence, from suppressed rebellion, is altogether unexplained. This proposition has neither soundness nor the sanction of either authority or precedent. The opposite doctrine lays at the foundation of the decision of the Supreme Court of the United States in *Texas* vs. *White*, (7 Wall., 700,) where the provisions of the Constitution were applied to a law, passed by the State of Texas during the recent war, in order to test the validity of such law. The plain proposition that a State can do nothing to discharge itself from its duty under the National Constitution, is at once decisive of the proposition. It may be proper to add that the idea involved in the proposition under consideration has probably arisen from misconstruing the intent and effect of the legislative Acts of Congress, commonly known as the Acts of Reconstruction. Assuming that those Acts determined the status of South Carolina, from their adoption, still they did not, either in name or in substance, assume to establish territorial government in this State, as such government is understood under our system of laws; but, on the contrary, pro-

vided provisionally for the exercise of the municipal powers of the State as such, leaving the federal power to be exercised in the Constitutional mode as applied to States. The National Executive and Judiciary acted upon this Constitution, and accordingly restored the judicial and executive functions of the National Government within the State as they existed before the war, and as they only can exist in States known as such to the Constitution.

It has also been contended that the Constitution of the State is not to be regarded as the law of a State, within the sense of the Constitution of the United States, because, having been approved by Congress as a condition of the admission of Senators and Representatives to Congress, it stands virtually as a law of Congress.

If the Constitution of this State is to have the force and effect of an Act of Congress, then Congress may, from time to time, amend or even repeal it, and the State is, in fact and in law, disfranchised, and a stranger to that domestic sovereignty characteristic of the States of the Union.

We are not prepared to accept the logical consequences of the doctrine contended for. The approval of Congress was neither in intention nor effect the enactment of a fundamental law for South Carolina, but was simply what it purported to be, an expression of satisfaction with the form in which she presented herself in claiming representation in the National Legislature.

Even if Congress is to be regarded as having approved not only in its general form and scope, as securing a Government republican in form, but in respect of each individual clause and requirement of that instrument, still its approval could no more authorize the impairing of the obligation of a contract than could a future Act of Congress authorize the passage of a law by the State having that effect. Congress has no power to discharge a State from any of the obligations imposed upon it by the Constitution of the United States. The Constitution and homestead law of this State are to be regarded, as it concerns the present question, in the same light as if adopted while the State was in the full enjoyment and exercise of all the rights and powers secured under the Constitution of the United States to the States of the Union. Accordingly their provisions are to be regarded as the law of a State within the sense of that part of the Constitution under consideration.

The question next arises, whether a State can pass laws exempting real estate in the hands of a debtor from liability under a judgment recovered against such debtor by a creditor claiming under a

contract existing prior to the adoption of the law authorizing such exemption.

The validity of exemption laws, as affecting antecedent contracts, does not depend upon the nature of the property exempted, but upon the rights of the creditor in respect of the debtor's property at large. The principle of exemption laws is, that the State will not lend its aid to the creditor, by way of seizing and appropriating the property of the debtor to the discharge of his obligation to such creditor, to the extent of stripping the debtor of all the means upon which his power of making future acquisitions depends. This principle is deeply rooted in a sentiment of humanity, having the force of a moral obligation, binding the creditor to a merciful exercise of his power over his debtor, and in conviction of the public conscience, that it is neither the duty nor the policy of government to enforce the rights of the creditor beyond the limits of a reasonable and humane exercise, nor to the extent of destroying the power of the debtor to obtain usefulness in his civil and domestic relations.

Within the limits imposed by the Constitution of the United States, hereafter to be considered, the State, in the exercise of its Legislative powers, must determine the nature and extent of property which should be included within the exemption, and the cases to which it should extend, and that determination is binding on this Court.

The Constitution of this State (Art. II, Sec. 32,) has, so far as the State has authority to act in the matter, determined that the real estate constituting the homestead of the head of a family, to a limited extent, shall be so exempted, and we are bound to regard such exemption as fairly embraced within the principle just stated as governing legislation of this class.

It has been argued that the right of the State to pass exemption laws binding upon antecedent contracts depends upon its power of regulating the prosecution of remedies in its Courts. This argument places the right on too narrow ground. The question whether the right of enforcement is to be regarded as included within the class of rights springing out of contracts, and protected by the Constitution of the United States, has been long settled.

In *Sturges* vs. *Crowninshield*, (4 Wheat., 122,) Chief Justice Marshall, while recognizing the authority of the State to modify the remedy, denied their power to withhold it. He holds that the law binding the party to a contract to its performance constitutes the obligation of the contract.

In *Biddle* vs. *Green*, (8 Wheat., 175,) the principle is affirmed that any conditions or restrictions tending to diminish the value and amount of the thing recovered impairs, or tends to impair, a contract right.

*Ogden* vs. *Saunders* (12 Wheat., 213,) elicited separate opinions from several of the Judges, and is valuable as exhibiting the current of opinion as to the precise subjects embraced within the obligation of a contract as contemplated by the constitutional provision.

Washington, J., holds (p. 256) that a statute that denies validity to, modifies or refuses to enforce, a contract, impairs the obligation. That the civil obligation interpreted by natural or universal law, modified by the municipal law, and not the mere moral obligation, is within the protection of the Constitution. He distinguishes clearly between a statute impairing a contract and one impairing its obligation, holding that the latter, though leaving unaffected the terms and stipulations of the contract, is still obnoxious to the Constitution if it discharges the party from the duty imposed by the contract.

Johnson, J., gives the following definition, (p. 282,) " The obligation of any contract will thus consist of that right or power over my will and actions which I, by my contract, confer on another;" and he holds that this duty is to be measured by the moral law, the universal law, and the law of society, conjointly. He holds that, as the rights of the individual are subservient to those of the whole, contracts must receive a relative, and not a positive, interpretation, and that there is a reasonable limit to the natural right to enforce compliance with an agreement when such right is enforced through the medium of government. He recognizes humanity as interposing such a limit. He further holds that anything that puts an end to the performance of a contract does not necessarily violate its obligation, but that " it is the motive policy, the object, that must characterize the legislative Act, to affect it with the imputation of violating the obligation of contracts," (page 291.) He adds, " It is equally the duty and right of Governments to impose limits to the avarice and tyranny of individuals, so as not to suffer oppression to be exercised under the semblance of right and justice."

The view thus taken regards the contract as the origin of rights, and of a power of enforcing these rights, by controlling the will and actions of the contracting party, whether that power is exercisable by the party acquiring the right, or by the Government alone, as

the proper medium of its enforcement, and imposes a salutary limit to that power when exercised by the Government. Thompson, J., says: "The obligation of the contract consists in the power and efficacy of the law, which applies to, and enforces the performance of, the contract, or the payment of an equivalent for non-performance." "It subsists in the law applicable to the contract." This definition looks principally to that part of the obligation which imposes on the Government the duty of enforcement, treating the power of enforcement residing in the Government, under the duty imposed by the contract, as an element of value in the contract itself, protected under the Constitution.

He also considers the proper limits of the duty of enforcement imposed on the Government, and, although stated in reference to the authority of a State law over subsequent contracts, it discloses a principle pertinent to the case of antecedent contracts.

He says, (p. 309,) " There can be no natural right growing out of the relation of debtor and creditor, that will give the latter an unlimited claim upon the property of the former," "nor is there any fundamental principle of justice growing out of such relations that calls upon Government to enforce the payment of debts, to the uttermost farthing, which the debtor may possess." He instances exemption laws as exemplifications of this principle. Ch. J. Marshall, speaking for himself and for Duvall and Story, J. J., holds, (p. 343,) that laws act upon a contract, not that they enter into it, and become stipulations of the parties. He says, (p. 354,) "that the obligation of a contract is not identified with the means which Government may furnish to enforce it; and that a prohibition to pass any law impairing it, does not imply a prohibition to vary the remedy, nor does a power to vary the remedy imply a power to impair the obligation derived from the act of the parties."

*Bronson* vs. *Kinzie*, (1 How., 311,) furnishes an illustration of the distinction that exists between the substantial part of a remedy, which enters into the binding force of a contract, and the form of the remedy, which is always subject to legislative modification.

Taney, Ch. J., in defining the right of a mortgagee, says, (p. 318,) "it is his absolute and undoubted right, under an ordinary mortgage deed, if the money is not paid at the appointed day, to go into the Court of Chancery, and obtain an order for the sale of the whole mortgaged property, (if the whole is necessary,) free and discharged from the equitable interest of the mortgagor. This is his right by the law of the contract, and it is the duty of the Court to

maintain and enforce it, without any unreasonable delay." As a consequence of this doctrine, he holds that a statute of a State, passed subsequent to the mortgage, giving the mortgagee a limited time to redeem, was unconstitutional. In other words, he considered the mortgage as creating a power of sale of a certain character, and that the duty was imposed upon the Court of enforcing that power of sale, according to the intentions of the parties. He admits the power of the State Legislature to modify remedies, and recognizes a limit to the general duty of enforcing the performance of contracts, instancing the case of exemption laws, where considerations of policy and humanity must influence the extent to which aid should be afforded. He also recognizes the fact, that in the exercise of those powers of the State Legislature, they are to be governed by their own sense of the considerations of policy and humanity involved. But he interposes a general limit on this power, namely, that such legislation must not, in effect, impair the obligation of the contract, in which case it is prohibited.

In *McCracken* vs. *Heyward* (2 How., 608,) Baldwin, J., states, very fully and connectedly, the various principles to which we have referred, as set forth in the previous cases. In tracing the force and effect of the obligation into the judgment and execution for its enforcement, he says (p. 614) : " The Marshal can do, under the authority of the law, whatever he could do under the fullest power of attorney from the execution debtor, and no State law can prohibit it." It was accordingly held, in that case, that a law of Illinois, providing that property offered for sale under judgment should not be sold, unless two-thirds of its value was offered for it, was, in its bearing on an antecedent contract, inoperative.

In *Planters' Bank* vs. *Sharp*, (6 How., 301,) Woodbury, J., recognizes the validity of exemption laws.

From the foregoing views certain conclusions may be drawn bearing on the present question. The contract of the parties is the basis of the obligation which the law enforces. From the contract arises a duty binding the party, embracing not only the idea of compliance with its terms and stipulations, but of making compensation in the event of the failure of strict compliance for any cause insufficient to justify such failure. There also arises from such contract a right to demand the performance of such duty ; superadded to this is a power either special—enabling the party having the right, by his own act, to procure satisfaction, as in case of a power to sell— or general, and which can only be exercised by the Government

called upon to enforce the performance of such duty. In virtue of this power, the Government can take the goods of A. and confer them, or their value, upon B., in satisfaction of B.'s demand against A., an act of authority which, but for the contract, could not rightfully be exercised by the Government as between such parties. This duty, right and power, as defined and limited by the municipal law, constitute the obligation of the contract.

When the contract calls for the payment of money, or when, from the inability of the party to comply strictly, or from the policy of the law, compensatory satisfaction is appropriate, it is the right of the creditor to demand that the property of the debtor should be applied to produce such satisfaction. The power lodged in the hands of the Government for execution is commensurate with the right and duty on which it rests; and, although the form of procedure through which satisfaction is to be obtained may be moulded, from time to time, according to the will of the Government, yet, under the Constitution of the United States, satisfaction, according to the nature and extent of such right and duty, cannot be denied.

The right of the creditor to have the property of the debtor thus applied is not unlimited. One well-defined limitation is .that involved in the exemption laws, resting, as we have seen, on considerations of humanity and public policy. The foundation of this limitation is too obvious to need argument or illustration. A creditor may press his demand to an extent that would shock the moral sense of all mankind; in such a case it is not the province nor the duty of the Government to lend him its aid, and thus transfer the obloquy from the individual oppressor to the whole community of which he is a member.

It may be said that, conceding the limitation, still, it should remain as defined at the inception of the contract, as the basis of its satisfaction.

The answer to that objection is, that questions of public morals and policy must be resolved as events arise. The abstract principle of right is unchanging, but the duty it enforces varies with the condition of society and the course of public events.

As the relations of men and social bodies change, duties are changed or modified. As important as it is that commercial faith should be maintained, it is equally important that society should faithfully observe its moral obligations, prepared at every change of circumstances to recognize and discharge its recurring duties.

It is within the power of the State to exempt the lands and per-

15A

sonal property of a debtor, to a limited amount, from liability, on account of an existing indebtedness, so long as such exemption does not, in effect and intention, impair the obligation of such contract. There is no ground for ascribing to the exemption laws of this State any such effect or tendency.

The next question to be considered is, whether the lien allowed by the law to a judgment is, apart·from the right of the creditor heretofore considered, within the protection of the provision of the Constitution of the United States, so as to invalidate any law passed subsequently to the recovering of such judgment diminishing the effect of such lien.

In *Watson* vs. *Mercer,* (8 Pet., 88,) Story, J., says, (p. 100;) "it is clear that this Court has no right to pronounce an Act of the State Legislature void, as contrary to the Constitution of the United States, from the mere fact that·it divests antecedent vested rights of property."

"The Constitution of the United States does·not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws."

The vested right must be in the nature of a contract, in order to be brought within the protection thus afforded.

The lien of a judgment is a mere right of preference as among purchasers and creditors.

It is to be regarded as an incident of the remedy not in the contemplation of the contracting parties. The judgment is not in itself a contract, (*Biddeson* vs. *Whytel,* 3 Burr., 1545,) and it cannot originate rights of the class protected under the United States Constitution. Whatever was within the obligation of the original contract may be claimed as against the legislative authority of the State, but not that which is conceded as an incident of a remedy in the Courts of this State.

The decree recovered by the appellants is entitled to have the same force and effect as a judgment in this respect, and no other; and a homestead may be properly reserved out of the lands bound by such decree.

The question of constitutionality, as arising under the Constitution of this State, resolves itself into one of construction merely, as the homestead exemption is allowed by the Constitution itself as broadly as secured under the Act. There can be no question on the terms of the Constitution but that the exemption was intended to apply to all demands, whether antecedent or subsequent.

It remains to consider whether the death of the ancestor of the respondents before the adoption of the homestead regulations precludes his family from claiming the benefit of the homestead exemptions.

The language of the Constitution (Art. II, Sec. 32,) is as follows:

"The family homestead of the head of each family residing in this State—such homestead consisting of dwelling-house, out-build-ings, and lands appurtenant, not to exceed the value of one thousand dollars, and yearly product thereof—shall be exempt from attachment, levy or sale on any mesne or final process issued from any Court."

The exemption is not to the debtor as such, but to the head of a family. The subject of protection is the family, the head of the family being referred to as its representative. It would be an unreasonable and unnatural conclusion to hold that this provision was not intended for the security of families deprived of their natural protection.

That the head of the family must be the debtor, in order to secure such protection, is neither within the letter nor the spirit of the clause. Whenever there is a family and a family homestead, it is to be presumed that there is a head to the family, or one peculiarly charged with responsibility for the protection of such family, and the homestead is to be regarded as the family homestead of the head of such family, within the meaning of the Constitution. Such a state of facts we must assume to exist in the present case. The immunity from seizure and sale is, therefore, complete, as far as the laws of this State are concerned, and, as we have already seen, effective as it regards the Constitution of the United States.

The decree of the Circuit Court must be affirmed.

*Wright*, A. J., concurred.

Moses, C. J. I concur in the opinion, so far as it holds that the homestead exemption allowed by the Constitution of this State can prevail against creditors on contracts existing prior to its adoption.

I also concur in holding that the death of the ancestor before the adoption of the Constitution does not preclude his family from claiming the benefit of the homestead exemption.

I, however, entirely dissent from so much of the judgment of the Court as extends the exemption against creditors holding judgments or decrees obtained prior to the adoption of the State Constitution,

regarding such application of the provision in conflict with the Constitution of the United States, which prohibits a State from passing any law impairing the obligation of contracts.