### TRIMMIER v. WINSMITH.

1. HOMESTEAD—ESTATE.—It is the settled law of this State, that the exemption of a homestead in no wise affects the title to the land so exempted.

2. IBID.—OBLIGATION OF CONTRACTS.—The legislature cannot so change the remedies for the enforcement of contracts, in force when a contract was made, as substantially to impair its value. Therefore, when a debt was contracted at a time when a homestead was exempted by the Constitution to a debtor only out of land on which he resided, and appurtenant thereto, and afterwards the Constitution was so amended as to allow an exemption out of any lands, lots of land adjoining the family residence, but not a

part of it, nor appurtenant thereto, cannot be claimed by the debtor as a homestead against this debt.

3. IBID.—A homestead exemption ceases whenever the family, by death or removal, ceases to exist as a family of this State.

4. IBID.—ESTOPPEL.—A creditor having acquiesced in a homestead set apart under his execution to his debtor, is estopped from afterwards assailing this exemption as unconstitutional, but he is not estopped from levying and selling this homestead when, by death and removal of the debtor and his family, the conceded right to homestead has ceased to exist.

5. IBID.—PETITION—INNOCENT PURCHASER.—A purchaser for value of this homestead at a sale for partition, in a cause to which only the surviving heirs of the deceased debtor were parties, within a year of the debtor's death, was not an innocent purchaser without notice; and he took by his purchase only the estate of these heirs, which was subject to the lien of the judgment so soon as the right to homestead ceased.

Before WALLACE, J., Spartanburg, July, 1893.

The opinion states the case.

*Messrs. Duncan & Sanders,* for appellant.

*Messrs. Bomar & Simpson,* contra.

March 20, 1894.   The opinion of the court was delivered by

MR. JUSTICE POPE.   The plaintiff recovered a judgment against the defendant, in the Court of Common Pleas for Spartanburg County, in this State, on a cause of action, a debt, which arose prior to the year 1880,[1] which judgment was renewed in 1884, amounting, when renewed, to $771.25.   Upon this judgment execution was issued and levied upon three small lots of land of the defendant.   At the time of this levy, the defendant was the head of a family residing in this State; such family, so residing here, consisted of defendant and his wife. Defendant had only one child, who, for some years previous, had resided in the State of North Carolina.   On defendant's demand therefor, said three lots of land were set apart to him as a homestead on the 7th day of February, 1885, by the three appraisers duly appointed for such purpose, such action of the appraisers being in writing, under their hands and seals, in

[1] And subsequent to 1868.—REPORTER.

the presence of two subscribing witnesses; but it was stated in such writing that the same was so set apart under the act of the General Assembly of this State, passed on the 24th day of December, 1880, and such homestead was to vest thereunder in the defendant, his heirs, and assigns, in accordance with the provisions of that act. These homestead proceedings were recorded in the office of register of mesne conveyances for said Spartanburg County by the plaintiff, who was then clerk of court, and *ex officio* said register of mesne conveyances, on 17th November, 1885.

In the year 1888, both plaintiff and defendant departed this life. Mrs. C. E. Winsmith, the widow of defendant, continued to hold said three lots as homestead until November, 1889, at which date, under an action by herself as plaintiff and her only child, Mrs. Moore, as defendant, for the sale of the same for partition between the two, the master sold the three lots to Baxter H. Moore, the son-in-law of Mrs. Winsmith and the husband of Mrs. Moore, but no title actually was made until October, 1892.

The executrix &c. of plaintiff demanded of George B. Dean, as sheriff for Spartanburg County, in this State, prior to 13th February, 1893, to levy upon and sell the said three lots to satisfy the aforesaid judgment of her testator. This demand was refused by said sheriff. Thereupon a rule was issued by Judge Norton requiring such sheriff to show cause why he should not be enforced to make such sale. The sheriff made return, embodying therein the facts previously recited, denying that the said lands were liable to sale under such execution. Affidavits were also submitted *pro* and *con*. That of B. H. Moore was as follows: "That he was the purchaser of the lots of land sought to be sold herein under the judgment and execution in the above entitled cause, for a valuable consideration, on the 　　 day of (November), 1889, when the said lots were sold by the master for Spartanburg County at public outcry, the same being sold as a part of the homestead of John Winsmith, deceased, at the instance of C. E. Winsmith, his widow, and Kate M. Moore (*nee* Winsmith), his daughter, for division between them as the only heirs at law of the said John Winsmith, deceased.

That up to the death of the said John Winsmith, deceased, the said land was a part of the homestead of said deceased, whereon he and his wife, the said C. E. Winsmith, resided; and that after the death of the said John Winsmith, his said widow continued to live on the same for some time, when, on account of the protracted illness of her daughter, Mrs. K. M. Moore, the said Mrs. C. E. Winsmith went to Charlotte, N. C., to be with her daughter, who continued to be in very bad health. That the said Mrs. C. E. Winsmith would go back to see after her affairs upon this homestead property, and kept her furniture there, and received the rents from the same, saying she could not consent to give up her home. Finally she was persuaded by her daughter, Mrs. K. M. Moore, to consent to a partition of the homestead between them, which had descended to them as the only heirs at law of the said John Winsmith, deceased, and to go there and permanently reside with her daughter. This she consented to do, and after the sale in partition aforesaid, disposed of most of her furniture which was then at such homestead, and went to reside with her daughter. That this deponent bought the lots aforesaid, now sought to be sold under execution herein, in good faith at said partition sale, and paid for the same, he being the highest bidder on the same among many others who were bidders for said property at the sale aforesaid, and now holds a deed for the same made to him by the master for Spartanburg County. That the said Mrs. C. E. Winsmith never at any time prior to the action for partition aforesaid abandoned said homestead, but always claimed the same, and was reluctant to consent for said sale, saying that she believed she would outlive her said daughter, on account of the precarious condition of said daughter's health, and only yielded to such sale after the earnest solicitation of her said daughter, and the said Mrs. Winsmith always claimed and recognized the said land as part of her homestead up to the time of the partition thereof."

The affidavit of T. R. Trimmier set forth, that by the records of said Spartanburg County, it was shown that Mrs. C. E. Winsmith was the owner, under a deed made to her in 1881, of thirty-four acres of land, whereon was a dwelling house and

out buildings, adjoining the three lots in controversy, for which thirty-four acres the sum of $3,050 was paid. That the said premises were where John Winsmith and his wife, C. E. Winsmith, resided from the year 1881, and prior thereto, up to the date of his death and until her removal to Charlotte, N. C., by Mrs. Winsmith, his widow. That there has been no time since 1881 when said thirty-four acres were not worth $3,000, and the dwelling house thereon $1,000. The affidavit of H. B. Carlisle, Esq., who was master, alleges, that, although he has made the deeds to said lots of land to B. H. Moore, he had never reported the sale to the court, and such sale, so far as he knows, has never been confirmed. It was admitted at the hearing that Mrs. C. E. Winsmith departed this life in Charlotte, N. C., at the residence of her daughter, Mrs. Moore, on the 14th January, 1891, leaving Mrs. Moore as her only heir at law. It was further admitted that the three lots of land now in controversy are contiguous to the thirty-four acres whereon the defendant, Dr. John Winsmith, and Mrs. C. E. Winsmith, his wife, resided, but that said three lots of land were not parts of the thirty-four acre tract.

All these matters were considered by Judge Wallace, who, on the 9th day of August, 1893, filed his order. wherein "It is ordered and adjudged, that the land levied on is subject to levy and sale under plaintiff's execution. It is, therefore, ordered, that the rule herein be made absolute." From this order and the judgment entered thereon, B. H. Moore and Geo. B. Dean, as sheriff, have appealed: 1. In ruling and holding that the land levied upon was subject to levy and sale under the execution of F. M. Trimmier. 2. In not ruling and holding that B. H. Moore had a good and valid title as an innocent purchaser for value from the master, as to the land levied upon, and that the same was not subject to levy under plaintiff's execution. 3. In not ruling and holding that the assignment of the homestead, duly made and recorded to John Winsmith, vested the same, exempt from levy and sale, in the said John Winsmith and his heirs. 4. In not ruling and holding that B. H. Moore was an innocent purchaser for value of the land purchased at the partition sale of the same, at least against the

said F. M. Trimmier and his representatives. 5. In not ruling and holding that F. M. Trimmier and his representatives are estopped from enforcing the judgment and execution herein, because the said F. M. Trimmier was the execution creditor at whose instance the assignment of the homestead herein was made and set apart, and that he acquiesced in the same during his own lifetime, and that of the said Mrs. Winsmith, and, with his knowledge, permitted the same to be sold for partition among the heirs of the said Winsmith, and to pass into the hands of innocent purchasers.

We have taken the pains to reproduce in this opinion the grounds of appeal as they were presented to this court by the appellants. The questions raised by these five grounds of appeal may be considered thus: *First.* Under what law of this State was the exemption of homestead to be made to be valid? *Second.* Could a valid exemption of homestead be made, under the proofs in this case, to extend beyond the lives of Dr. Winsmith and his wife? *Third.* Granted that the assignment of homestead could only extend during the life of Dr. Winsmith and his wife, was there anything in the knowledge of F. M. Trimmier of the proceedings in homestead, and his conduct thereunder, by which the doctrine of estoppel would be set in motion as a defence to this proposed sale of land in favor of B. H. Moore as against F. M. Trimmier and his representatives?

*First.* It has long been settled law in this State, that the exemption of homestead in no wise affects or changes the title to the land upon which it fastens. The title is vested in no one by the operation of such homestead exemption. *Bull v. Rowe,* 13 S. C., 362; *Chalmers* v. *Turnipseed,* 21 *Id.,* 136. As was said in the last case cited: "It has been held in several cases recently decided by the court, that neither the Constitution nor the acts on the subject of homestead create any new estate different from that already vested in the head of the family; on the contrary, as we have held, their only effect is to exempt certain property from levy and sale, without affecting or changing in any way the character of the estate therein. In other words, a certain portion of the property of the head of the family, as it already exists, so far as the estate therein is

concerned, is set aside and walled in, so to speak, as a homestead against invasion by process from court."

Following in the wake of the Supreme Court of the United States in its decision of the case of *Gunn* v. *Barry*, 15 Wall., 610, this court has adopted the language of that decision, and held "that the legal remedies for the enforcement of a contract that belong to it at the time and place when it is made are a part of its obligation. A State may change them (legal remedies), provided the change involves no impairment of a substantial right. If the provision of the Constitution, or the legislative act of a State, fall within the category last mentioned, they are, to that extent, void. They are, for all the purposes of the contract which they impair, as if they had never existed." The debt due by Dr. Winsmith to F. M. Trimmier was contracted prior to December 13, 1880, when the General Assembly of this State had passed an act to carry into effect the amendment to article II., section 32, of the Constitution of this State (17 Stat., 213, 320), and it must necessarily follow that the remedy in existence when the debt was created, being a part of such obligation, cannot be disturbed either by the amendment to the Constitution itself or the act of the legislature enforcing the provisions of such amendment. *Norton* v. *Bradham*, 21 S. C., 378. The rights of the defendant, so far as homestead exemption is concerned, are to be governed by the provisions of the Constitution of this State, and the acts of the General Assembly prior to December, 1880.

Section 32 of article II. of the Constitution provided: "The family homestead of the head of each family, residing in this State, such homestead consisting of dwelling house, out buildings, and lands appurtenant, not to exceed the value of one thousand dollars- and yearly product thereof, shall be exempt from attachment, levy or sale on any mesne or final process issued from any court." In *Chalmers* v. *Turnipseed*, 21 S. C., 137, when this section was being construed, it was decided: "The exemption depends upon certain conditions and surroundings, to wit: first, there must be a head of a family, and, second, there must be a homestead, a dwelling house, a place where the head of a family resides. When these two conditions are pre-

sent, the constitutional exemption as to realty attaches, and as long as they exist, the Constitution is a perfect shield." So that Dr. Winsmith was the head of a family residing within this State, and as such was entitled to a homestead as against the debt of the plaintiff, provided there was "a dwelling house, a place where the head of the family resides." Was there such a dwelling house in the case at bar? It is in proof there was no such dwelling house on the three lots of land here in controversy. It is true, Mrs. C. E. Winsmith owned a thirty-four acre tract of land, whereon was a dwelling house that she and her husband, Dr. Winsmith, occupied for years, but such thirty-four acres of land was not a part of the three lots of land here in controversy, nor were they appurtenant thereto. It must follow, therefore, that the second condition above referred to as fixed in *Chalmers.* v. *Turnipseed, supra,* as necessary to the existence of a homestead, has not been furnished in the case at bar, and, further, that Dr. Winsmith was not entitled to have [these lots] assigned to him as a homestead.

*Second.* Our answer to the first question renders it almost unnecessary to consider the second proposition. But we will say that, under the construction given to the 32d section of article II. of the Constitution, in *Chalmers* v. *Turnipseed, supra,* the exemption, if entirely regular and legal, would have ceased when the family of the deceased as residing in this State ceased so to reside either from death or removal.

*Third.* Neither *Bull* v. *Rowe,* 13 S. C., 355, nor *Chalmers* v. *Turnipseed, supra,* quite answer this question, though the latter nearly does so. In the former case (*Bull* v. *Rowe*) the creditor in question, Mrs. Watts, had not recovered her judgment when the homestead was set apart to Rowe. In the latter (*Chalmers* v. *Turnipseed*), although creditors of Robert Stewart had not reduced their debts against his estate to judgment, yet they were all parties to the suit, and this court held that such creditors having acquiesced in the assignment of a homestead to the widow, Mrs. Stewart, they were estopped from contesting such exemption, but granted such creditors relief by having the homestead exemption made liable to the payment of their respective claims, on the ground that the

widow of Robert Stewart, deceased, having died leaving no child or children or other family residing in this State, that such assignment of homestead was at an end. Now in the case at bar, under the authority of *Chalmers* v. *Turnipseed*, F. M. Trimmier, the plaintiff, having acquiesced in the assignment of these three lots of land to Dr. Winsmith as a homestead, under the act of 1880 or other acts, such assignment being clearly unconstitutional and illegal, could not afterwards repudiate the assignment. But does it follow that he is to be denied the relief accorded to the creditors of Robert Stewart in *Chalmers* v. *Turnipseed*, namely, when the homestead has been extinguished by the death of the parties named in the Constitution as the holder of such assignment, to have the property upon which the exemption fastened made liable to the payment of his debts? All that F. M. Trimmier in his lifetime did was to acquiesce in the assignment of the homestead. He died in 1888, about the same time Dr. Winsmith did; so, therefore, he had nothing to do with any partition proceedings instituted by the widow of Dr. Winsmith against the daughter of Dr. Winsmith touching these three lots of land. Any judgment in such a suit only bound the parties to it.

Appellant, in effect, says, admitting all this to be true, Baxter H. Moore was a purchaser for value without notice. This court has repeatedly held that a purchaser at a judicial sale is only bound to see that the court which sells the land has jurisdiction to do so, and that all necessary parties are before the court. *Iseman* v. *McMillan*, 36 S. C., 27, and cases there cited. What did this purchaser find when he went to the records in the partition suit? That Dr. Winsmith had died in November, 1888, and that this suit for partition of the lands of his estate was begun in less than twelve months from his death, and that the sale was actually ordered in less than twelve months from his death, and that no creditor or personal representative of such deceased was a party to the suit. The records disclosed the existence of the unsatisfied judgment of the plaintiff. Under these circumstances, did not Baxter H. Moore buy with his eyes wide open, and was not all that he bought at such sale the estate of Mrs. Winsmith and

Mrs. Kate M. Moore, as the heirs at law of Dr. John Winsmith, deceased? In other words, the deeds he received from the master conveyed no more to him than would the deeds of Mrs. Winsmith and Mrs. Moore themselves. Would such deeds from Mrs. Winsmith and Mrs. Moore to Baxter H. Moore for these three lots of land have done anything to prejudice the rights of the creditors of John Winsmith? We do not think so.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.