McCLENAGHAN v. McEACHERN.

EQUITY—ISSUES—NONSUIT—TITLE—PRACTICE.—In an action for partition, where the defendants deny plaintiffs' title, and issues are submitted by the Court out of chancery to the jury to try the question of title, the Judge cannot grant an order of nonsuit on the trial of this question by the jury.

Before BUCHANAN, J., Florence, February, 1896. Reversed.

Action in partition by John C. McClenaghan, Richard H. McClenaghan, and Mary A. McClenaghan against Leah McEachern, H. H. McClenaghan, Charles E. McClenaghan, J. Boyd Brunson, sr., J. Boyd Brunson, jr., and Bessie Brunson and Marie Brunson, the three first defendants and the two last being minors over fourteen years of age. Order of nonsuit was granted upon trial of issue of title by jury. Plaintiffs appeal.

*Mr. H. L. B. Wells*, for appellant, cites: 14 S. C., 458; 25 S. C., 481; 13 S. C., 486; 23 S. C., 316; 3 S. C., 206; 1 A. & E. Ency., 641; 37 S. C., 377; 37 S. C., 101; 26 S. C., 1; 24 S. C., 456.

*Messrs. Woods & Ship*, contra, cite: 21 S. C., 375; 19 S. E. R., 285; 21 S. C., 136; 15 Wall., 610; 37 S. C., 376; Con. 1868, art. 2, sec. 32; 27 Am. Rep., 200; Thomp. on Homestead, sec. 106; 82 Am. Dec., 711; 7 Am. Stat. Rep., 182; 33 Cal., 220; 35 Cal., 319; 62 Cal., 286.

Aug. 10, 1896. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an appeal from an order of nonsuit on an issue of title to thirty acres of land in Florence County, submitted to a jury in a suit for the partition thereof among the parties above named. The order of non-

suit does not contain the ground upon which it is based, nor does the record before us disclose the ground, except such as might be inferred from the evidence offered on the trial, which is set out in the case. Appellants allege several grounds of error; but as the record discloses no ruling of the Circuit Court other than the order of nonsuit, the sole question that we can consider is whether there was error in granting the order of nonsuit upon the evidence submitted. The evidence offered tended to show the following as the facts: In 1873, H. H. McClenaghan, the father of the plaintiffs and the three first named defendants, became seized in fee of the tract of thirty acres in question. At this time he was the head of a family, and with his wife and children then born, was living on a tract of land belonging to his wife, containing 320 acres, contiguous to the said thirty acre tract. He died in September, 1880, still seized of this tract, leaving surviving him his widow, Mrs. A. L. McClenaghan, and six children, the plaintiffs, and the first three named defendants—these last being minors over the age of fourteen years at the commencement of this suit for partition, August 31st, 1895. From 1873 up to the time of his death, he used this land in connection with the place where he resided with his family, cultivating it in connection with the said home place, to make a support for the family—the two places, according to one witness, being so connected as that a person could not tell the difference between the two places. This thirty acre tract was all the real estate owned by H. H. McClenaghan, and its value was less than $1,000. There was no dwelling house on it. In 1881, the land in question was rented to one Samuel Melton for $50 or $60 annual rent. In 1876, McClenaghan became indebted to H. H. Bethea on a note for $237.36, due November, 1876. This claim was put in judgment March 30th, 1877, which was renewed and new execution issued thereon, October 20th, 1881. This tract was then levied on November 1st, 1881, and sold to W. H. Bethea for $190, who took sheriff's deed, December 15th, 1881. Thereafter W. H. Bethea

brought action against Mrs. A. L. McClenaghan and Samuel Melton, the tenant in possession, for recovery of this land, but without making the children of H. H. McClenaghan parties. Judgment went against Mrs. McClenaghan by default. W. H. Bethea, on 23d November, conveyed the premises to Mrs. Leila C. Brunson, who died December 30th, 1885, leaving surviving her the defendant, J. Boyd Brunson, sr., her husband, and the other named Brunsons, defendants, as her children. The Brunsons claim the whole land under sheriff's deed in 1881. The McClenaghans concede that the Brunsons own one-third of the land by reason of judgment against Mrs. McClenaghan for the recovery of the land, but they claim that the sale under the judgment in 1881 was void, because the widow and children of H. H. McClenaghan were then entitled to a homestead in this land, it being of less value than $1,000, and being all the real estate owned by H. H. McClenaghan. If the sale of the land in 1881 was a valid sale, then the nonsuit was proper, since under that sale all the title of the McClenaghans would pass to the grantor of the Brunsons. On the other hand, if, at the time of the sale in 1881, the widow and children of McClenaghan were entitled to have this land exempt from sale as a homestead, the sale was void and the nonsuit was improper. *Cantrell* v. *Fowler*, 24 S. C., 426; *Ketchin* v. *McCarley*, 26 S. C., 1.

The right to homestead in this case must be determined by the Constitution of 1868, as it was previous to the amendment of 1880, since the debt, upon which the judgment was based, was contracted in 1876. *Gunn* v. *Barry*, 15 Wallace, 610; *Cothran* v. *Darcy*, 5 S. C., 125. Art. 2, sec. 32, then declared that "the family homestead of the head of each family residing in this State, such homestead consisting of dwelling house, out-buildings, and lands appurtenant, not to exceed the value of $1,000, &c., shall be exempt, &c." Under this provision the family homestead was the thing designed to be exempted, and it was defined as consisting of certain things. The *use* to which the real

estate was put was one of the conditions upon which the right of homestead therein depended. The amendment of 1880 changed this, and allowed a homestead in lands, without regard to the use made of the land claimed as exempt. This enlargement of the homestead privilege, however, under the principle decided in *Gunn* v. *Barry, supra,* could not be made to apply in this case, notwithstanding the judgment was not attempted to be enforced until 1881, when the amendment of 1880 was in force.

Under the contention in this case it became necessary to determine two questions: first, whether the thirty acre tract was appurtenant to the family homestead when the debt was contracted; second, whether, if appurtenant then, it had ceased to be so in 1881, when the land was sold under the judgment?

On the first question, while under a very strict and technical definition of the word "appurtenant," there is room for contention that one tract of land could not be appurtenant to another tract, or the family homestead thereon, when, too, the tracts are owned by different persons (there being no question in this case relating to easements or servitudes), yet, under the broad and liberal construction which should be given to the words used in the Constitution to define the right and extent of the homestead exemption, we do not think it could be said as matter of law upon the evidence that the thirty acre tract belonging to the head of the family could not be appurtenant to the "family homestead," even though the dwelling house might be situated on an adjoining tract belonging to the wife of the head of the family. This conclusion is justified by the principles decided in *Norton* v. *Bradham,* 21 S. C., 375; *Riley* v. *Gaines,* 14 S. C., 454; *Harrell* v. *Kea,* 37 S. C., 376. The evidence in this case tended to show that the thirty acre tract was cultivated in connection with the dwelling house tract for the support of the family, and it should have been left to the jury, under proper instructions, to determine whether the evidence established that the thirty acre tract

came within the definition of "lands appurtenant" to the family homestead.

It should also have been left to the jury, under proper instructions, to determine whether there was evidence sufficient to warrant the conclusion that the thirty acre tract had, at the time of the sale in 1881, ceased to be used as lands appurtenant to the family homestead. It cannot be said, as matter of law, that the mere renting for a year of this thirty acre tract constituted an abandonment of the tract, as land appurtenant to the family homestead. In *Jeffries* v. *Allen*, 29 S. C., 508, this Court said: "Nor do we know of any principle which would prevent the widow from claiming a homestead, because of the fact that until an effort has been made to enforce the collection of the debt against the land, she has enjoyed the rents and profits of the land out of which the homestead is claimed." This language is strictly appropriate in this case. In *Harrell* v. *Kea*, 37 S. C., 377, the Court does use the following language, quoted by respondents' attorneys: "What little evidence there is upon the subject would seem to show that it was not appurtenant, but was rented out to another, and was not used in connection with the family homestead at the time the deed was made." But this is very far from saying that, because the land was rented to another, therefore, it ceased to be appurtenant to the family homestead. In the case of rural homesteads, especially in view of our system of utilizing farm lands, it would be a very dangerous doctrine to assert, that the moment either necessity or convenience caused the head of a family, or his widow and children after his death, to rent out the family homestead or any portion of it, instead of directly cultivating it, that moment it ceased to be exempt as lands appurtenant to the family homestead. Undoubtedly, under the provision of the Constitution of 1868, which we are considering, there may have been such an abandonment of, or change in, the use of land or real estate, as would prevent the head of a family, or his widow and children, from claiming it as exempt as a family homestead, but the

evidence of the intent to abandon such use should be clear
and satisfactory, before the tribunal trying the issue should
declare that the family whose protection is sought under
the Constitution, has forfeited its right to that protection.
Especially is this true where minors, as in this case, are
claiming the right of homestead.

There being some evidence on the issue of title involved
in this case, under the well-settled rule, the case should have
been submitted to the jury, and it was error to nonsuit the
plaintiffs.

The order of nonsuit appealed from is reversed, and the
case is remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE McIVER.    This being an action for
partition—a case of equitable cognizance—in which an issue
of title was raised by the pleadings, it seems to me that,
under the case of *Woolfolk* v. *Graniteville Man'g Co.*, 22
S. C., 332, the motion for a nonsuit was improperly granted.
That, also, was an action for partition of certain real estate,
in which the plaintiffs claimed that they were entitled
to certain interests as tenants in common with defendant.
The answer of defendant denied the alleged tenancy in com-
mon, and alleged that defendant had the absolute title in
fee to the premises sought to be partitioned.   The case being
on Calendar 2, the attorneys for plaintiffs moved for an or-
der submitting the issue of title to the jury, which was
granted.   On the trial of such issue, the Circuit Judge made
certain rulings as to the admissibility of some of the testi-
mony offered by plaintiffs, which induced the plaintiffs to
move for leave to have a nonsuit entered, with leave to move
to set it aside in the Supreme Court.   This motion was re-
fused by the Circuit Judge, upon the ground that he had
neither the power or discretion to grant a nonsuit in such
a case.   This was made one of the grounds of appeal, and
the Supreme Court, in disposing of that ground, used the
following language: "We do not understand that the plain-
tiffs asked leave to discontinue their whole case, but that

they might have an order of nonsuit as to the issue ordered, leaving the proceeding in equity still standing. We do not see how the Judge could have granted a nonsuit as to the issue, which was not an independent action, but 'an issue from chancery,' ordered at the instance of the plaintiffs themselves, to determine (in a manner they had a right to demand) a question which had arisen in the progress of the cause. We suppose the plaintiffs might have brought an original action at law, or possibly may have obtained an order in their case that an action at law should be brought; but probably for some good reason they chose not to do so. They instituted on the equity side of the court an action for partition, and obtained an order out of chancery for the issue. This being the case, the officer who tried that issue, sitting as a law judge, could not grant a nonsuit; for that would have been precisely equivalent to revoking the order. He had no right to do that, or refuse to try the issue, or to grant a new trial or nonsuit. He had no option but to try the case, and report back the result." In addition to this, it may be said that a judgment of nonsuit in such a case does not finally determine the rights of the parties. The object of the action is to obtain partition, and that object is sought to be defeated by the allegation in the answer, that the plaintiffs have no title. This raises an issue which must be tried by a jury (unless that mode of trial is waived), and until such issue is tried and finally determined, the Court of Equity is powerless to determine whether the plaintiffs are entitled to the relief demanded. It seems to me, therefore, that the nonsuit was improperly granted, for the reason indicated, and that the proper course was to let the issue of title be determined by the verdict of the jury, under proper instructions from the Circuit Judge as to the law. And when the issue of title was thus determined, it was for the Circuit Judge to grant or refuse the relief demanded, according as the rights of the parties might appear. This was the course pursued in the case above cited, which I am unable to distinguish *in principle*, from this case.

I am not prepared, however, to assent to the doctrine laid down in the leading opinion, as to the question whether the thirty acre tract of land, upon which the judgment debtor never resided, can, in the sense of the term "appurtenant," as used in the Constitution of 1868 (which it is conceded must govern this controversy), be regarded as appurtenant to another tract of land which he never owned, but upon which he resided with his family. Indeed, it seems to me premature to consider that question now, as the "Case" fails to show that any such question was ever considered or passed upon by the Circuit Judge.

I think, therefore, that the judgment appealed from, which, as I understand it, is nothing but a judgment of nonsuit as to the issue of title, should be reversed, and the case be remanded to the Circuit Court for a new trial, in which the issue of title should be determined by the verdict of the jury (unless that mode of trial be waived) under appropriate instructions as to the law; and when that issue is determined, the Circuit Judge should render judgment upon the whole case, according to the rights of the parties as thus made to appear.

MR. JUSTICE GARY. I concur in the separate opinion of Mr. Chief Justice McIver.