SLOAN v. HUNTER.

1. If HOMESTEAD in lands be once set apart, no exceptions filed, and proceedings recorded, it can never be sold to satisfy that judgment, although there may have been errors of law in the assignment.

2. A HOMESTEAD set apart in 1889 against debt contracted in 1877 cannot be sold under execution against administrator of deceased judgment debtor, although the father and mother be dead, and the children all adults and living off the land.

3. EXCEPTIONS too general.

Before GAGE, J., Laurens, February, 1902. Affirmed.

From dismissal of rule against sheriff in case of J. B. E. Sloan against R. Lee Hunter, administrator, plaintiff appeals.

*Messrs. N. B. Dial* and *F. P. McGowan,* for appellant, cite: *Law existing when debt was contracted governs:* 13 S. C., 355; 21 S. C., 126; 41 S. C., 109; 21 S. C., 372. *When homestead fell in land became subject to judgment:* 41 S. C., 109; Con. 1868. *Acts attempting to create homestead under Con. of 1868 are unconstitutional:* 11 S. C., 333; 47 S. C., 446.

*Messrs. Ferguson & Featherstone,* contra, cite: *As to homestead:* 40 S. C., 189; 18 S. C., 601; 29 S. C., 106; 41 S. C., 116; Con. 1868, art. II., sec. 32; 15 St., 370, 371; 54 S. C., 208; 25 S. C., 98. *As to lien of judgment:* 15 St., 498; Code 1882, sec. 310; 32 S. C., 228; 39 S. C., 262. *As to the execution:* 15 S. C., 149; 16 S. C., 72; 21 S. C., 154; 5 Rich. L., 501.

February 19, 1903.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    This is an appeal from an order discharging a rule against the sheriff, requiring him to show cause why he refused to levy the execution in the above stated case, on two tracts of land, one containing 50 and the other 150 acres, which had been set off to Henry M. Hunter as his homestead.    The contention as to the 50 acre tract was abandoned.    On the 13th of June, 1881, J. B. E. Sloan recovered judgment against Henry M. Hunter on a debt contracted 12th October, 1877.    The land was set off to Henry M. Hunter as a homestead on the 15th of December, 1889. All the proceedings relating thereto were duly recorded in the homestead book.    The homestead was set off in the case of J. B. E. Sloan *v.* Henry M. Hunter.    No exceptions were filed to the return of the commissioners by J. B. E. Sloan. Henry M. Hunter did not live upon the 150 acres nor was

it appurtenant to his dwelling. Henry M. Hunter died in 1893. On the 12th of May, 1894, summons to revive said judgment was served on R. Lee Hunter, as administrator, and the Court granted an order in July, 1894, reviving the said judgment. Execution was issued 20th December, 1895, and lodged with the sheriff December 23d, 1895. The rule was heard by his Honor, Judge Gage, in October, 1901, and he dismissed it, on the ground that the land having been set off as a homestead, was exempt from levy and sale.

The appellant's first two exceptions are as follows: "I. Because his Honor, Judge Gage, erred in holding that the alleged dedication of homestead of Henry M. Hunter estopped the plaintiff from ever thereafter enforcing his judgment and execution against the land embraced in said alleged homestead. II. Because he erred in holding that the setting off of said homestead was a perpetual bar to the enforcement of the execution, when the homestead record did not show that the land set off as homestead embraced the dwelling house of Henry M. Hunter, and when it was neither the dwelling house nor appurtenant thereto." We deem it only necessary to cite the cases of *Symmes* v. *Symmes,* 18 S. C., 601; *Chalmers* v. *Turnipseed,* 21 S. C., 126, and *Trimmier* v. *Winsmith,* 41 S. C., 109, 19 S. E. R., 283, to show that these exceptions cannot be sustained.

The third exception assigns error as follows: "III. Because he erred in not holding that when Henry M. Hunter and his wife died, and his children had attained their majority and dispersed from his home, their right of homestead then ceased to exist, and the assignment thereof became extinct." The rule is well settled in this State that the right of homestead is to be determined by the laws of force when the debt was contracted. Sec. 32, art. II., of the Constitution of 1868, contains the following provisions: "The family homestead of the head of each family residing in this State, such homestead consisting of dwelling house, outbuildings and lands appurtenant, not to exceed the

value of $1,000 and yearly products thereof, shall be exempt from attachment, levy or sale, or any mesne or final process, issued from any Court * * * It shall be the duty of the General Assembly at their first session to enforce the provisions of this section by suitable legislation." Accordingly, in 1868, the General Assembly passed an act (14 Stat., 20), the fourth section of which provides: "The estate or right of homestead of any family existing at his death shall continue for the benefit of his widow and minor children, and be held and enjoyed by them until the youngest child is twenty-one years of age, and until the marriage or death of the widow, and be limited to that period." Again, the General Assembly passed an act in 1872 (15 Stat., 230), the fourth section of which provides: "That the homestead when assigned as herein prescribed shall vest in the head of the family in fee simple, and be freed and discharged from all debts and liabilities whatever so long as he or she shall remain resident in the State, and no longer." In the eighth section of this act, which secures a right of homestead to the widow and minor children of any deceased father or husband, there is, however, no provision as to the time during which such exemption shall continue. These acts were repealed by the act of 1873 (15 Stat., 370), the second section of which is as follows: "That when thirty days shall have elapsed, after the filing of the return of said appraisers setting off a homestead to any debtor, according to the provisions of section 1 of this act, and no good cause has been shown or exceptions filed against said return, such debtor may have such return recorded in the office of the register of mesne conveyance of the county in which the same is located, and upon such return being so recorded in thirty-three days after the proceedings have become final, the title to the homestead so set off and assigned shall be forever discharged from all debts of said debtor then existing or thereafter contracted." Section 4 of that act is as follows: "If the husband be dead, the widow and children living on the homestead, if the father and mother be dead, the children living on the homestead,

whether any or all such children be minors or not, shall be entitled to have the family homestead exempted in like manner as if the husband or parents were living; and the homestead so exempted shall be subject to partition among all the children of the head of the family in like manner as if no debts existed: *Provided,* That no·partition or sale in that case shall be made until the youngest child becomes of age, unless upon proof satisfactory to the Court hearing the case, such sale is deemed best for the interest of such minor or minors." These sections, with some immaterial changes in section 2, have continued of force since the act of 1873, as will be seen by reference to sections 2627 and 2629 of the Revised Statutes. On the 13th day of December, 1880 (17 Stat., 320), the Constitution of 1868 was amended by striking out the section hereinbefore mentioned and inserting in lieu thereof another section, which provides: "The General Assembly shall enact such laws as will exempt from attachment and sale under any mesne or final process, issued from any Court, to the head of any family residing in this State, a homestead in lands, whether held in fee or in any lesser estate, not to exceed in value $1,000 with the yearly products thereof." At the time when the plaintiff's debt was contracted, section 313 of the Code provided: "This section shall not be construed so as to make final judgments in any case a lien on the real property of the judgment debtor exempt from attachment, levy and sale under the Constitution." This provision is now found in section 309 of the Code. The foregoing acts and provisions of the Constitution are set out in the cases of *Chalmers* v. *Turnipseed,* 21 S. C., 126, and *Stewart* v. *Blalock,* 45 S. C., 61, 22 S. E. R., 174. The constitutional amendment of 1880 in nowise affects the foregoing sections of the act of 1873, which, as we have stated, remained of force and were necessarily considered by the Court in cases arising since the amendment aforesaid. Therefore, the language of the Court in construing these sections is applicable to cases arising prior as well as subsequent to the amendment of 1880. In the case of *Stewart* v.

*Blalock,* 45 S. C., 61, the Court says: "Next comes the act
of 1880, 17 Stat., 513, which is entitled 'an act to determine
and perpetuate the homestead,' and seems to be the law now
in force, at least, so far as the question now presented is
concerned.   The second and fourth sections of that act are
substantially the same as those above cited from the act of
1873.   From this hasty review of the legislation upon the
subject, it is apparent that in the earlier acts an intention to
limit the duration of the exemption was expressed; but in
the later acts no such intention appears; and, on the contrary,
it appears that the intention was to declare the property
exempted forever discharged from liability for debt.   This
intention is expressly declared in the second section of the
act of 1880, in reference to the property exempted under pro-
cess against the debtor, and is necessarily implied from the
fourth section of the act providing for a claim of homestead
by the widow and children, by the express declaration that
such property is subject to partition amongst all the children
'in like manner as if no debt existed.'   We do not think,
therefore, that the proposition upon which the appeal of the
creditors rests can be sustained."   The power of the debtor
to sell his homestead is thus stated in *Cantrell* v. *Fowler,* 24
S. C., 424: "Now, if the judgment was no lien upon this
property while it was in the possession of Ravan, because it
was exempt under the homestead laws, and if, as has been
held, a judgment debtor can sell or mortgage his homestead,
then it follows that the judgment never could be a lien upon
the property in dispute, for as soon as it was conveyed to
the plaintiff it became his property, and as such, of course,
not subject to the lien of a judgment against another person;
for if, as we have seen, there was no lien upon it at the time
of the sale to the plaintiff, then, of course, the plaintiff took
his title free from any lien.   The fact that the homestead had
not been admeasured and set off, is a matter of no conse-
quence."   The principle is thus stated in *Ketchin* v. *McCar-
ley,* 26 S. C., 1, 2 S. E. R., 1099: "It is clear, therefore,
that the land in controversy in this case was not only exempt

from levy or sale under the execution issued to enforce McCarley's judgment, but was not subject to the lien of such judgment. If, then, the land was not subject to the lien of the judgment when it was conveyed to the plaintiff, it must necessarily have passed to her free from any such lien or encumbrance, and cannot now be subjected to the satisfaction of a judgment against her grantor. There is nothing in the inherent nature of a judgment which gives it a lien upon real property, but it acquires that quality solely from the statute; and, as we have seen, the statute in this State not only does not make a judgment a lien upon *all* the real property of the judgment debtor, but expressly excepts so much thereof as is exempt *from* levy and sale under the Constitution. So that whenever it is ascertained, either by admission or otherwise, that a certain piece of real estate is exempt from levy and sale under the Constitution, it is at the same time ascertained that such real estate is not subject to the lien of any judgment against the owner thereof, and if sold by him is sold free from encumbrance." In *Beaty* v. *Richardson,* 56 S. C., 173, 34 S. E. R., 73, the Court says: "It is well settled in this State, at least, that the homestead laws effect no change in the title to the property. As was said in *Elliott* v. *Marshall,* 19 S. C., at page 242, the purpose of such laws 'was not to create any new estate, or to invest estates already existing with any new qualities, or to subject them to any restrictions, but to secure a right of exemption by forbidding the use of the process of the Court to sell certain property for the payment of debts,' and as was said in *ex parte Ray,* 20 S. C., at page 248: 'We do not understand the homestead laws as designed to alter or in any way affect the statute for the distribution of intestates' estates, and they do not even purport to do so.' Now, if the homestead laws create no new estates and do not invest those already existing with any new qualities, or 'subject them to any restrictions,' and do not 'in any way affect the statute for the distribution of intestates' estates,' why should they be held to affect in any way the statute of wills, by which it

16—65

is declared (section 1987 of the Rev. Stat. of 1893), that any person having right or title to property, 'may dispose thereof by will in writing at his or her own free will and pleasure, except as herein provided,' and there is no provision therein forbidding any interference with the right of homestead." Section 2468 of the Code of 1902 provides that, "When any person shall die without disposing of the same by will, his estate, real and personal, shall be distributed in the following manner" * * * We see no reason why effect should not be given to the "statute of distribution" as well to the "statute of wills." The statute of 3 and 4 W. & M. makes a devisee liable "in the same manner as the heir at law." *Fogle* v. *Church,* 48 S. C., 86, 26 S. E. R., 99. This' exception is overruled.

The fourth exception is as follows: "IV. Because he erred in not holding that all acts of the General Assembly passed prior to 1880, providing for the perpetuity of homesteads, were in conflict with the Constitution, and he should have held that the homestead ceased when the two necessary constitutional conditions ceased to exist, to wit: The head of the family, or family, and the family homestead." This exception is too general for consideration.

The fifth exception is as follows: "V. He erred in not making the rule absolute, and in not ordering the sheriff to enforce said execution." This exception fails to point out any specific error.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.