**In re David Paul EVANS, Debtor**

**In re Mary Sawyer Glenn, Debtor**

**In re Lucille F. Moore, Debtor**

**In re Samuel Guy Floyd, Debtor.**

Nos. 06–02413, 06–02506, 06–02532, 06–02461.

United States Bankruptcy Court, D. South Carolina.

Dec. 5, 2006.

---

David D. Cantrell, Jr., Easley, SC, Robert R. Thuss, SC Appleseed Legal Justice Center, Columbia, SC, for Debtor David Paul Evans.

Dana Elizabeth Wilkinson, Spartanburg, SC, for Debtor Mary Sawyer Glenn.

Edward L. Bailey, Bailey Law Firm, Spartanburg, SC, for Debtor Lucille F. Moore.

David H. Hanna, Sr., Spartanburg, SC, for Debtor Samuel Guy Floyd, Jr.

George L. Clauer, III, Skinner and Associates Law Firm, LLC, Greenville, SC, for Trustee Randy A. Skinner.

## ORDER

HELEN E. BURRIS, Bankruptcy Judge.

Before the Court is the objection by the Trustee in each of the above captioned cases to the Debtors' claimed homestead exemptions. The Court allowed the above

1. S.C.Code Ann. § 15–41–30(1) (2006 S.C. Acts 300).

2. S.C.Code Ann. § 15–41–35 (2005).

3. Prior to the recent amendment, the South Carolina homestead exemption provision stated as follows:

parties to consolidate briefing and hearings in the cases. The issues raised in each objection and response are the same, and there are no facts in dispute. The question before the Court is whether the Debtors may claim the more favorable exemption provided in the recently enacted South Carolina Home Security Act ("Home Security Act") [1] or whether they are limited to the lesser homestead exemption found in prior law as to any debts contracted before the Act's effective date.

### Background

Upon the filing of a petition in bankruptcy, certain of a debtor's legal and equitable interests in property become part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). A debtor may, however, claim certain real and personal property exempt from the estate. 11 U.S.C. § 522(b)(1). A party in interest may file an objection to the claimed exemption within 30 days after the first meeting of creditors. Fed. R. Bankr.P. 4003(b). If a debtor lives in a state that has chosen to opt out of the federal exemption scheme of § 522(d), a qualifying debtor "may exempt from property of the estate...." "any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition." 11 U.S.C. §§ 522(b)(1) and 522(b)(3)(A).

South Carolina is an "opt out" state [2] and prior to passage of the Home Security Act, provided an exemption of up to $5000 of a debtor's interest in property used as a residence (or up to $10,000 for jointly owned property.) [3] The Home Security

The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by any court or bankruptcy proceeding:

(1) The debtor's aggregate interest, not to exceed five thousand dollars in value, in

Act increased the amount of South Carolina's homestead exemption to $50,000.[4]

The Home Security Act provides as follows:

SECTION 1. This act may be cited as the "Home Security Act", [sic] It is the intent of the General Assembly, because of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, to offer to the citizens of South Carolina protection for their homes in the event that financial difficulties, such as military deployment or extreme medical emergencies, occur for which bankruptcy filing may be the only available remedy.

Exemptions increased; adjustments

SECTION 2. Section 15–41–30(1) of the 1976 Code is amended to read:

"(1) The debtor's aggregate interest, not to exceed fifty thousand dollars in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor, except that the aggregate value of multiple homestead exemptions allowable with respect to a single living unit may not exceed one hundred thousand dollars. If there are multiple owners of such a living unit exempt as a homestead, the value of the exemption of each

individual owner may not exceed his fractional portion of one hundred thousand dollars. Beginning on July 1, 2007, and each year thereafter, each dollar amount in subsection (1) of this section, immediately before July first, shall be adjusted to reflect the change in the Southeastern Consumer Price Index, All Urban Consumers, as published by the Department of Labor, Bureau of Labor Statistics, for the most recent year ending immediately before January first preceding July first, and to round to the nearest twenty-five dollars the dollar amount that represents this change. No later than March first of each year, the Economic Research Section of the Office of Research and Statistics of the Budget and Control Board shall publish in the State Register the dollar amounts that will become effective on each July first."

Time effective

SECTION 3. This act takes effect upon approval by the Governor.

S.C.Code Ann. § 15–41–30(1) (2006 S.C. Acts 300). The Act took effect on May 25, 2006.

All relevant facts in the cases are stipulated. In each case the Debtor filed for bankruptcy protection after May 25, 2006, and all debts relevant to the bankruptcy proceeding were incurred prior to May 25, 2006.[5] The Trustees argue that the increased exemption amount under the

real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor, except that the aggregate value of multiple homestead exemptions allowable with respect to a single living unit may not exceed ten thousand dollars. If there are multiple owners of such a living unit exempt as a homestead, the value of the exemption of each indi-

vidual owner may not exceed his fractional portion of ten thousand dollars.
S.C.Code Ann. § 15–41–30(1) (2005).

4. The exemption amount had been raised previously in 1981 from $1000 to $5000. 1981 Act. No. 53.

5. The Trustees' objection in each case is based solely on the application of law to these facts and no other eligibility issues have been raised.

Home Security Act is not available to these Debtors because their contracts for debts existed prior to the effective date of the Act.

### Discussion and Conclusions of Law

■ The Trustees base their argument on a holding repeated in several early South Carolina state court cases that "[t]he rule is well settled in this state that the right of homestead is to be determined by the laws of force when the debt was contracted." *Sloan v. Hunter*, 65 S.C. 235, 43 S.E. 788, 789 (1903). However, § 522(b)(3)(A) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 [6] ("BAPCPA"), provides that a debtor in bankruptcy in an "opt out" state can exempt property pursuant to

> State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place. . . .

This federal law clearly changes the application of state law exemptions in two ways. First, a debtor may or may not be able to claim the same exemptions in bankruptcy as in state court collection proceedings. For example, in South Carolina the exemption statute in question merely requires a debtor to claim domicile within the state without a specified time limit. S.C.Code Ann. § 15–41–30 (2005). Therefore, while under state law even a short-term domiciliary of South Carolina may be able to take advantage of the Home Security Act in non-bankruptcy collection proceedings, that same resident may be denied that right in a bankruptcy proceeding pursuant to § 522 and its choice of exemption law. Conversely, if a South Carolina resident moves to another state, he or she may be able to claim exemptions under the Home Security Act if a bankruptcy is then filed, even though he or she is no longer domiciled in South Carolina.

■ Section 522 also determines the operative date for claiming an exemption, which may be different than that provided in state law. A bankrupt debtor may elect exemptions under "State or local law that is applicable on the date of the filing of the petition." 11 U.S.C. § 522(b)(3)(A). The parties in this case disagree as to what law was applicable to these Debtors on that date. The Trustees' argument asks the Court to find that the applicable law is the same as the law that would be applied to a debtor in a state court collection proceeding without regard to the language of § 522(b)(3)(A). The Court finds that just as the appropriate choice of law is found in § 522, based on these facts the law "applicable on the date of the filing of the petition" is a question of federal law as well, not state law as the Trustees assert.

In the case of *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Supreme Court of the United States faced a similar question. The Court discussed the effect of 11 U.S.C. § 522(f) on state exemption law when a bankruptcy is filed. Section 522(f) states:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would

[6] Pub.L. No. 109–8, 119 Stat. 23 (2005) (codified in scattered sections of 11 U.S.C.)

have been entitled under subsection (b) of this section . . . .

Section 522(b) is the federal exemption provision at issue here. In *Owen* a creditor recorded a judgment against a Florida debtor, but the debtor at the time did not own any real property. *Owen*, 500 U.S. at 306, 111 S.Ct. 1833. Thereafter, the debtor purchased a condominium, but that property did not qualify as a homestead subject to exemption under existing Florida law, so the judgment attached to the property. *Id.* at 307, 111 S.Ct. 1833. One year later, the homestead law in Florida was amended, and the debtor's condominium could qualify for a homestead exemption. However, the state statute did not extend to pre-existing liens attached to property before the change in the law. The debtor filed for bankruptcy protection, and the bankruptcy court denied the debtor's motion to avoid the pre-existing lien. *Id.* at 307–08, 111 S.Ct. 1833. The Supreme Court reversed and allowed the debtor to avoid the lien under § 522(f) by claiming the homestead exemption that was not otherwise available to him outside of bankruptcy: "Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision." *Id.* at 313–14, 111 S.Ct. 1833. The Court concluded that exempt status of property is determined by applying the law in effect on the date of the filing of the petition, not when the lien fixed:

> In the dissent's view, the question is whether the lien impairs an "exemption to which the debtor would have been entitled at the time the lien 'fixed.' " Under the Code, however, the question is whether the lien impairs an "exemption to which the debtor would have been entitled under subsection (b)," and under subsection (b), exempt property is determined "on the date of the filing of the petition," not when the lien fixed. 11 U.S.C. §§ 522(f), (b)(2)(A). We follow the language of the Code.

*Id.* at 314 n. 6, 111 S.Ct. 1833 (citation omitted).[7]

The Home Security Act was the exemption law as of the date each Debtors' petition was filed and it is therefore the "applicable" exemption law for bankruptcy purposes regardless of how the state exemption law would be applied in state court collection proceedings. To the extent that federal and state law differ on the application of the exemption, § 522 preempts state law. *In re Snow*, 899 F.2d 337, 340 (4th Cir.1990) (household goods subject to lien for judgment due to unpaid rent are exempt under § 522(f) even though state exemption law does not extend to execution orders on account of unpaid rent); *Matter of Storer*, 13 B.R. 1, 4 (Bankr. S.D.Ohio 1980) ("Ohio Rev.Code Ann. § 2329.661(C) is in direct conflict with 11 U.S.C. § 522(f) and the act of Congress prevails over the conflicting state law.")

■ Even if this Court must determine how the Home Security Act would be applied in state court collection proceedings, the decision would be the same. As the Act clearly states, the increased homestead exemption law was enacted *"because of"* BAPCPA "to offer to the citizens of

---

7. In the case of *In re Konnoff*, 356 B.R. 201 (9th Cir. BAP 2006), the Bankruptcy Appellate Panel analyzed *Owen* as applied by the lower court in *Konnoff* and found that an Arizona statute requiring a debtor to reinvest homestead proceeds post-petition or lose the exemption therein was enforceable in bankruptcy. 356 B.R. at 207–08. *Konnoff* criticized *Owen* on other grounds than those relied upon here. The *Konnoff* court criticized the part of the *Owen* decision that discussed "built in limitations" in state exemptions, finding this discussion too vague to preempt the reinvestment requirement. *Id.*

South Carolina protection for their homes in the event that financial difficulties, such as military deployment or extreme medical emergencies, occur for which bankruptcy filing may be the only available remedy." S.C.Code Ann. § 15–41–30(1) (Supp.2006). A United States District Court in New York recently faced interpretation of a similar statute in *In re Hayward*, 343 B.R. 41 (Bkrtcy.W.D.N.Y.2006). In New York the legislature increased the state's homestead exemption from $10,000 to $50,000. The debtors in that case filed bankruptcy and claimed the higher amount, with a creditor objecting. The District Court affirmed the bankruptcy court's allowance of the exemption. The court noted also that the legislature expressed its intent to provide some indirect relief to debtors facing the strict new provisions of the BAPCPA, effective two months after the amendment. *Id.* at 46.[8] The District Court reasoned that it was inconceivable that the state governing body could have intended to delay the designated relief from the effects of the BAPCPA for several years until those who incurred debts *after* the exemption amendment filed bankruptcy. *Id.*

█ In the Home Security Act the South Carolina legislature specifically and clearly set forth its intent to offer protection to the bankrupt citizens of the state from some of the effects of the BAPCPA, and if the immediacy of application is not crystal clear from the words of intent it is made more transparent by the fact that the new statute provided immediate escalations of the exemption amount. Requiring citizens to wait for years to take advantage of this exemption would be inconsistent with the stated intent, and would render the escalation of the exemption as early as 2007 completely unnecessary. The Court must interpret the statute consistent with legislative intent where such intent is clear. *Kiriakides v. United Artist Commc'ns, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994); *Jones v. State Farm. Mut. Auto. Ins. Co.*, 364 S.C. 222, 230, 612 S.E.2d 719, 723 (Ct.App.2005) ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute.")

Finally, the Court has reviewed the cases offered by the Trustees to support their objections: *Beaty v. Richardson*, 56 S.C. 173, 34 S.E. 73 (1899); *Sloan v. Hunter*, 65 S.C. 235, 43 S.E. 788 (1903); *Ex parte Goldsmith*, 68 S.C. 528, 47 S.E. 984 (1904); *McClenaghan v. McEachern*, 47 S.C. 446, 25 S.E. 296 (1896); *Trimmier v. Winsmith*, 41 S.C. 109, 19 S.E. 283 (1894); and *In re Kerr*, 14 F.Cas. 386 (D.S.C.1873). The Debtors contend that the line of cases relied upon by the Trustees is actually based on an obsolete interpretation of the federal contract clause (U.S. Const. art. II, § 10). The Debtors argue that these cases can be ultimately traced to the Supreme Court case of *Gunn v. Barry*, 82 U.S. (15 Wall.) 610, 21 L.Ed. 212 (1872).[9]

---

8. The District Court relied largely on the reasoning in an unpublished opinion, *In re Little*, No. 05–68281, 2006 W.L. 1524594 (Bankr. N.D.N.Y. Apr.24, 2006). The *Little* opinion contains an exhaustive and thoughtful analysis of cases respectively permitting and denying retroactive application of increased exemptions. It reaches the same result as *In re Hayward.*

9. Of the cases relied upon by the Trustees, the following explicitly cite *Gunn* as the basis for applying the homestead exemption in effect when the debt was contracted: *In re Kerr, Trimmier, McClenaghan* and *Ex parte Goldsmith. Beaty* cites no authority, and *Sloan* states without any citation to authority that "[t]he rule is well settled in this state that the right of homestead is to be determined by the

*Gunn* adopted a strict construction of the contract clause which, Debtors contend, was eventually discredited by subsequent cases beginning with the case of *Home Building and Loan Association v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

In *Gunn* the Supreme Court of the United States applied a strict interpretation of the contract clause and held that the Georgia Supreme Court's application of a recently increased homestead exemption to a pre-existing debt violated the contract clause of the federal constitution. According to the Court,

> [T]he legal remedies for the enforcement of a contract, which belong to it at the time and place where it is made, are a part of its obligation. A State may change them, provided the change involves no impairment of a substantial right. If the provision of the constitution, or the legislative act of a State, fall within the category last mentioned, they are to that extent utterly void.

82 U.S. at 623, 15 Wall. 610. However, thereafter in *Blaisdell* the Court upheld a state statute which imposed a moratorium on mortgage foreclosures, even though the statute retroactively impaired contract rights. 290 U.S. at 447, 54 S.Ct. 231. The Court repudiated a literal construction of the contract clause:

> To ascertain the scope of the constitutional prohibition [of the contract clause], we examine the course of judicial decisions in its application. These put it beyond question that the prohibition is not an absolute and is not to be read with literal exactness like a mathematical formula.

290 U.S. at 428, 54 S.Ct. 231. The Court reasoned as follows:

Not only is the constitutional provision qualified by the measure of control which the state retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of the people. It does not matter that legislation appropriate to that end "has the result of modifying or abrogating contracts already in effect." 290 U.S. at 434–35, 54 S.Ct. 231 (quoting *Stephenson v. Binford,* 287 U.S. 251, 276, 53 S.Ct. 181, 189, 77 L.Ed. 288 (1932)). The Debtors argue that it is therefore now well established that the contract clause does not invalidate state regulation merely because such regulation alters contractual rights or remedies.

It has been recognized by courts and legal commentators that with *Blaisdell* the Supreme Court signaled the beginning of the modern view of the contract clause. In *In re Punke,* 68 B.R. 936 (Bankr. N.D.Iowa 1987) a bankruptcy court stated that "[w]hile early decisions implemented a strict interpretation [of the contract clause], more recent cases have developed a more liberal test making it more difficult to find a constitutional violation." *Id.* at 939. The court specifically addressed the continued viability of *Gunn:*

> While *Edwards [v. Kearzey,* 96 U.S. (6 Otto) 595, 24 L.Ed. 793 (1877) ] and the cases it derived from have never been expressly overruled, *see* ... *Gunn v. Barry,* 82 U.S. (15 Wall.) 610, 21 L.Ed. 212 (1872) modern decisions have cast considerable doubt on the continued viability of the old view. Probably the first case to adopt a more liberal interpretation of the Contract Clause was [*Blaisdell* ].

*In re Punke,* 68 B.R. at 939 (one citation omitted).[10]

---

laws of force when the debt was contracted." 43 S.E. at 789.

**10.** *See also City of El Paso v. Simmons,* 379 U.S. 497, 508, 85 S.Ct. 577, 583–84, 13

Current standards for contract clause analysis are set forth in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). First, there must be a determination that the state law impairs the contract. 459 U.S. at 411, 103 S.Ct. 697. If so, the impairment must be substantial. Finally, it must be determined whether the impairment is permissible as a legitimate exercise of the state's sovereign powers. *Id.* at 411–12, 103 S.Ct. 697. *See also Baltimore Teachers Union v. Mayor and City Council of Baltimore*, 6 F.3d 1012, 1015 (4th Cir.1993). To analyze the effect of the new exemption law on existing contract rights and complete a discussion of the law relied upon by the Trustees, it should be noted that most of the South Carolina cases regarding exemptions and violation of the contract clause were decided over one hundred years ago and certainly before the passage of the BAPCPA. In today's mobile society and given the choice of law provisions in the bankruptcy code, a creditor cannot reasonably anticipate a borrower's future exemptions under 11 U.S.C. § 522 at the time a debt contract is executed. Therefore, a contracting party has no reasonable expectation that any particular state's exemption law in existence at the time a debt is incurred is a substantial yet unwritten part of its contract should that debtor file

L.Ed.2d 446 (1965) ("The *Blaisdell* opinion ... amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause"); Ronald D. Rotunda & John E. Nowak, *Treatise on Const. L.* § 15.8 (3d ed.2006 update) (by the turn of the century, "the Court had reached the end of the period of the expansive reading of the [contract] clause. During the latter part of the nineteenth century the provision lost its importance as the principal constitutional clause available to protect vested rights.... Earlier Supreme Courts had invalidated many of these [debtor relief] laws if they had a retroactive effect. Nevertheless, in [*Blaisdell*] the Court sustained a debtor relief law despite its retrospective impact."). The Court is cognizant of the case of *Scholtec v. Estate of Reeves*, 327 S.C. 551, 490 S.E.2d 603 (S.C.App.1997) in which the South Carolina Court of Appeals noted that "the appropriate version of the [Homestead Exemption] Act to apply in this situation is that version which was in effect at the time that the debt arose." 327 S.C. at 555 n. 3, 490 S.E.2d at 605 n. 3 (citing *McClenaghan*, 47 S.C. 446, 25 S.E. 296, and *Trimmier*, 41 S.C. 109, 19 S.E. 283). However, the court noted there was no contention in that case that anything but the current version of the exemption was applicable. Accordingly, there was no reason or opportunity to scrutinize the underpinnings of that proposition. The Court also recognizes as dicta this Court's statement in *In re Faile*, No. 05–14478–jw, slip op. (Bankr.D.S.C. Aug. 8, 2006) that "South Carolina, traditionally, has applied the homestead exemption applicable at the time of the levy regardless of subsequent change in [the] exemption law." *In re Faile* cites *Pender v. Lancaster*, 14 S.C. 25 (1880), in which the court's holding that the exemption does not apply when enacted subsequent to levy is supported only by "conclusions reached by this court, in general harmony with the views that have prevailed wherever the system of homestead exemptions has been adopted." 14 S.C. at 28. This Court can only assume, given its date, that *Pender* is doctrinally linked to *Gunn*. *Faile* also cites the pre-*Gunn* case of *Frierson v. Wesberry*, 11 Rich. 353, 1858 WL 4687 (S.C.App.L.1858) wherein the South Carolina Court of Appeals held that a subsequent "repeal" of a homestead act will not divest the holder of title to property that was vested pursuant to a previous homestead act. However, in two other pre-*Gunn* cases, *In re Kennedy*, 2 S.C. 216, 1870 WL 3512 (1870) and *Howze v. Howze*, 2 S.C. 229, 1870 WL 3514 (1870) the South Carolina Supreme Court held that the state homestead exemption, by then embedded in the Constitution of 1868, "*was* intended to apply to all demands, whether antecedent or subsequent." *In re Kennedy*, 2 S.C. at 223; *Howze v. Howze*, 2 S.C. at 231. In view of the historical era from which these cases emerge, the seemingly contradictory results in *Frierson, Kennedy* and *Howze* are not surprising and indicate that this was an unsettled area of the law prior to the Supreme Court's holding in *Gunn*.

for bankruptcy protection in the future. As federal bankruptcy law and mobility routinely alter the collection remedies associated with any pre-petition debt, contracting parties have no logical basis for incorporating any state's current exemption law into a debt contract by implication, as there is no guarantee or even reasonable expectation that the law in effect at that time and in that place will be applicable in a bankruptcy proceeding. No contract right is substantially impaired by the Home Security Act in a federal bankruptcy setting. *See Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.*, 323 S.C. 532, 540 476 S.E.2d 481, 486 (1996) (where there is a history of regulation and the foreseeability of further regulation, there is no substantial impairment to the contract).

### Conclusion

The Court finds that pursuant to 11 U.S.C. § 522(b) these Debtors may claim the homestead exemptions under the Home Security Act in these bankruptcy cases and, therefore, the Trustees' objections to exemptions are overruled.[11]

AND IT IS SO ORDERED.

### JUDGMENT

Based on the grounds stated in the Order filed herewith, the Trustee's Objection to Debtor's Claim of Exemption is overruled, and this Debtor may claim a homestead exemption under the South Carolina Home Security Act, S.C.Code Ann. § 15–41–30(1) (2006 S.C. Acts 300).

AND IT IS SO ORDERED.

11. Due to the importance of this decision and the need for consistency in the application of exemption law within the district, the Hon. John E. Waites and the Hon. David R. Duncan have reviewed and concur with this result.