In re Jin E. KIM, Debtor.

Arturo M. Cisneros, Chapter
7 Trustee, Appellant,

v.

Jin E. Kim, Appellee.

No. CC–00–1123–MOPB,
RS–99–12686–MJ.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on Oct. 11, 2000.

Filed Dec. 6, 2000.

D. Edward Hays, Rus, Milibrand & Smith, Irvine, CA, for Arturo M. Cisneros, Ch. 7 Trustee.

Jin E. Kim, Alta Loma, CA, Pro Se.

Before MONTALI, PERRIS and BRANDT, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

The Chapter 7 trustee appeals from an order of the bankruptcy court overruling his objections to the debtor's claim of exemption in funds held in a retirement plan.

He maintains that the debtor's receipt of all of those funds just days after bankruptcy requires disallowance of the exemption. We disagree and AFFIRM.

## I. FACTS

At the time he filed his Chapter 7 petition, Appellee Jin E. Kim ("Debtor") was employed as a bus driver with the Los Angeles Metropolitan Transit Authority ("MTA"). During the course of his employment, he had contributed to MTA's retirement income plan, the Los Angeles County Metropolitan Transportation Authority United Transportation Union Retirement Income Plan (the "Retirement Plan"). The Retirement Plan required monthly contributions and these contributions were non-refundable except in the event of death or termination of employment. The Retirement Plan prohibited employees from receiving funds until retirement, death or termination from full-time employment; moreover, the Retirement Plan contained no provision permitting employees to borrow from the plan. In addition, the Retirement Plan prohibited the transfer or assignment of funds accumulated in the plan:

A. Except to the extent that the following may be contrary to the laws of this State, and except as otherwise provided herein, no active Member, vested Member, retired Member or beneficiary hereunder shall have the right to assign, transfer, encumber, or anticipate his/her interest in any retirement funds accumulated under this Plan and in any retirement income being paid therefrom, and such funds and income shall not in any way be subject to any legal process to levy upon or attachment of the same for the payment of any claim against any such Member, vested Member, retired Member or beneficiary.

Under the Retirement Plan, an employee who had worked for MTA for at least 23 years was entitled to retire. On the petition date, Debtor had been employed by

MTA for 22 years and 51 weeks. He became eligible for retirement approximately one week later. Three days after that, he retired and received lump-sum payments from the Retirement Plan.

Debtor received his after tax contribution of $18,627.67[1] directly; the balance (approximately $285,000)[2] was rolled over into an individual retirement account ("IRA"). Debtor used the $18,627.67 distribution to pay personal bills, including the down payment on two new vehicles. In addition, Debtor structured the IRA in a manner that allowed him to receive regular monthly distributions to supplement his income. After retiring, Debtor resumed working for the MTA in a different capacity. The Retirement Plan specifically permits a retired employed to be re-employed.

Debtor filed a no-asset Chapter 7 case. On his Schedule C, Debtor disclosed and claimed as exempt (pursuant to California Code of Civil Procedure section 704.110)[3] his "retirement funds," which he improperly valued at $150,000 (even though his

entitlement under the Retirement Plan was nearly $305,000). Appellant Arturo M. Cisneros, the Chapter 7 trustee of Debtor's estate ("Trustee") filed objections to Debtor's exemptions, arguing that the "retirement funds" were not exempt, because they had been placed in an IRA account and were not being used for retirement purposes, that the Retirement Plan was not a spendthrift trust subject to exclusion from the estate, and that Debtor was not otherwise entitled to an exemption under California law.

■ On or about December 27, 1999, the bankruptcy court issued a memorandum decision concluding that all of the funds held in the Retirement Plan as of the petition date were fully exempt under CCP § 704.115. The bankruptcy court additionally held that the Retirement Plan was a spendthrift trust excluded from the bankruptcy estate, except for 25 percent of the funds (which, under California law, remain subject to claims of creditors).[4] It entered an order overruling Trustee's objections to Debtor's claimed exemptions on

---

1. This distribution was not taxable.

2. The balance of the distribution was subject to taxation.

3. Debtor claimed the retirement funds exempt pursuant to California Code of Civil Procedure section 704.110 ("CCP § 704.110"), which governs rights and benefits under a public retirement system. Subsection (b) provides that all amounts held, controlled, or in process of distribution by a public entity derived from contributions by that entity or an employee of that entity for public retirement benefit purposes and all rights and benefits accruing to any person under a public retirement system are fully exempt. After the trustee filed his objection to the exemptions, he and Debtor entered into a stipulation indicating that the bankruptcy court had to resolve the issue of whether the retirement funds qualified for an unlimited exemption pursuant to California Code of Civil Procedure section 704.115(a) ("CCP § 704.115"), which governs private retirement funds. As discussed below, the bankruptcy court determined that the retirement funds were fully exempt under CCP § 704.115(a); neither the parties nor the court addressed CCP § 704.110. The failure of the parties to address CCP § 704.110 is

irrelevant, however, because the funds would be fully exempt under both sections to the extent they were held in a retirement plan, whether public or private.

4. California law recognizes the validity of spendthrift trusts. *See* Cal. Prob.Code § 15301 ("if the trust instrument provides that a beneficiary's interest in principal is not subject to voluntary or involuntary transfer, the beneficiary's interest in principal may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary.") Nonetheless, the California Probate Code has limited the scope of the spendthrift protection. California Probate Code section 15306.5 provides that a judgment creditor may obtain an "order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the [spendthrift] trust instrument, ..." as long as the payment does not exceed 25 percent of the funds otherwise available to the beneficiary. *See* Cal. Prob. Code § 15306.5 (West 1991). The bankruptcy court, applying section 15306.5 and following *Neuton v. Danning (In re Neuton)*, 922 F.2d 1379 (9th Cir.1990), held that only 75 percent of the spendthrift trust was excluded from the estate.

February 25, 2000, and Trustee filed a timely notice of appeal.

## II. ISSUES

1. Whether the bankruptcy court erred in determining that the Retirement Plan was designed and used for retirement purposes and thus that Debtor was entitled to exempt fully those funds held in the Retirement Plan as of the petition date; and

2. Whether the bankruptcy court erred in determining that Debtor's Retirement Plan was a qualified spendthrift trust, with 75 percent of the funds excluded from the estate.

## III. STANDARD OF REVIEW

■■■ The bankruptcy court's application of California exemption law is a question of statutory construction which is reviewed *de novo. Friedman v. Broach (In re Friedman)*, 220 B.R. 670, 671 (9th Cir. BAP 1998). Whether property is included in a bankruptcy estate is a question of law also subject to *de novo* review. *Ramsay v. Dowden (In re Central Ark. Broad. Co.)*, 68 F.3d 213, 214 (8th Cir.1995). Whether a plan is designed and used for retirement purposes is a question of fact that the panel reviews for clear error. *Phillips v. Mayer (In re Phillips)*, 218 B.R. 520 (N.D.Cal.1998). Where the facts are established and the rule of law is undisputed, whether the facts satisfy the legal rule is a mixed question of law and fact that the panel reviews *de novo. Spenler v. Siegel (In re Spenler)*, 212 B.R. 625 (9th Cir. BAP 1997).

## IV. DISCUSSION

A. *The Retirement Funds Were Fully Exempt*

■■■ A debtor in bankruptcy is entitled to exempt certain assets from the bankruptcy estate. 11 U.S.C. §§ 522, 541.[5]

California has "opted out" of the federal exemption scheme, so California law governs whether funds contained in the Retirement Plan as of the petition date are exempt. *See Wolf v. Salven (In re Wolf)*, 248 B.R. 365, 367 (9th Cir. BAP 2000) ("In California, then, a debtor may exempt any property that is exempt under state law in effect on the petition date. Like the Code, case law makes it clear that a debtor's exemption rights are determined as of the date of the petition."). Although Debtor initially claimed the funds in the Retirement Fund as exempt under CCP § 704.110 (governing public retirement plans), the parties presented the bankruptcy court with legal memoranda focusing on the exempt status of the retirement funds under CCP § 704.115. Section 704.115 applies to private retirement plans "including, but not limited to, union retirement plans"[6] and fully exempts funds contained in such retirement plans:

(b) All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt.

Cal.Code Civ. Pro. § 704.115(a) and (b) (West Supp.2000).

Trustee contends that the full exemption of CCP § 704.115 is inapplicable, because Debtor did not use the retirement funds for retirement purposes. Trustee's argument, however, requires judicial consideration of Debtor's post-petition acts, because the retirement funds were clearly still held by and in the Retirement Plan as of the petition date. The bankruptcy court concluded that the exemption was determined as of the petition date and that the funds were held in a qualified retirement plan as of that date.

---

**5.** Unless otherwise indicated, all section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**6.** Trustee has not challenged the status of the Retirement Plan as a "union retirement plan."

■ A plan, account or annuity fits within the ambit of CCP § 704.115 when it is "designed and used for retirement purposes." *Bloom v. Robinson (In re Bloom)*, 839 F.2d 1376, 1378 (9th Cir.1988); *Jacoway v. Wolfe (In re Jacoway)*, 255 B.R. 234 (9th Cir. BAP 2000). In this case, the Retirement Plan was clearly designed for retirement purposes, and Trustee does not dispute that.[7] Trustee disputes that the funds from the Retirement Plan were "used" by Debtor for retirement purposes. Prior to, and as of the petition date, Debtor did not have control over any of the funds in the Retirement Plan. Consequently, he never used the funds for a non-retirement purpose. The fact that after the petition date, Debtor retired[8] and received the funds has no bearing on whether, as of the petition date, the Retirement Plan had been used for retirement purposes. The bankruptcy court held that the funds were held in a retirement plan as of the petition date and were exempt regardless of the Debtor's post-petition use of the funds.

■ The bankruptcy court did not err in holding that the relevant date for determining the status of the exemptions was the petition date. As noted in *Harris v. Herman (In re Herman)*, 120 B.R. 127, 130 (9th Cir. BAP 1990) (emphasis added), "Absent conversion from one chapter to another, the nature and extent of a debtor's exemption rights are determined as of the date of the petition .... Thus, *any post-petition disposition of the property or post-petition change in the identity of the*

*property into proceeds has no impact upon the exemption analysis." See also Graziadei v. Graziadei (In re Graziadei)*, 32 F.3d 1408, 1410 (9th Cir.1994) (quoting *Herman*, court held that post-petition sale of home does not alter debtor's entitlement to homestead exemption).

Similarly, this panel recently reiterated that a debtor's exemption rights are determined as of the petition date, noting that the law on this issue is well-established: "Unsupported by legal authority and contravened by the plain language of the Code, the debtor's attempt to carve out an exception to the well-established law that exemption rights are determined on the petition date must be rejected." *Wolf*, 248 B.R. at 367–68. *See also Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 255 (9th Cir. BAP 1988) ("Any exemptions claimed by the debtor are also determined as of the Chapter 11 filing date."); *Mueller v. Buckley (In re Buckley)*, 215 B.R. 1018, 1022 (8th Cir. BAP 1998) ("a debtor's right to an exemption is fixed as of the date of his or her filing in bankruptcy").

■ In this case, the panel must reject the Trustee's position that Debtor's post-petition conduct determines the nature of the exemption. First, the principal case relied upon by the Trustee where a court looked behind the title of a retirement plan and rejected a debtor's exemption in that plan because of debtor's use of the plan's funds is distinguishable. This case, *Daniel v. Security Pacific National Bank (In re Daniel)*, 771 F.2d 1352 (9th Cir. 1985), *cert. denied*, 475 U.S. 1016, 106

---

7. The Retirement Plan was clearly designed for retirement purposes, because it limited the ability of participants to recover contributions prior to retirement and required participants to work twenty-three years in order to receive full benefits. It does not allow the participants free access or control over their funds in the Retirement Plan until retirement.

8. Trustee attempts to create an issue as to whether Debtor actually "retired," inasmuch as he resumed work soon after retiring. This issue is a red herring. Debtor had not retired as of the petition date, and had not received any retirement funds as of that date.

As discussed later, the bankruptcy court merely had to consider the status of the retirement funds as of the petition date in determining whether the funds were exempt. The subsequent retirement (or non-retirement) of Debtor is irrelevant. In any event, as the bankruptcy court noted, Debtor's retirement satisfied the terms of the Retirement Plan, and the court was understandably reluctant to state (in what would have been dicta) that a person's decision to work after retirement negates the retirement and any benefits that flow from such retirement.

S.Ct. 1199, 89 L.Ed.2d 313 (1986),[9] involves a court's examination of a debtor's pre-petition use of the retirement funds. In contrast, the conduct at issue here occurred post-petition. Moreover, other cases cited by Trustee in his argument that a court can consider post-petition conduct are simply inapplicable. In *Arkison v. Gitts (In re Gitts)*, 116 B.R. 174 (9th Cir. BAP 1990), *aff'd*, 927 F.2d 1109 (9th Cir.1991), the court allowed the debtor to amend his schedules post-petition to claim a homestead exemption. In so holding, the court observed that the amendment was consistent with the facts that existed on the date of filing. In fact, the language of the *Gitts* decision is directly contrary to Trustee's position: "The right to exemptions under the Bankruptcy Code, like the Bankruptcy Act, is generally *determined by facts as they existed on the date bankruptcy was filed*." *Id.* at 178 (emphasis added). Likewise, another case cited by Trustee, *Martinson v. Michael (In re Michael)*, 163 F.3d 526 (9th Cir.1998), is distinguishable. In that case, the Ninth Circuit also held that the debtors could amend their schedules to add a homestead exemption under Montana law. The decision does not reflect that the facts upon which the debtors were claiming their exemption had changed since the petition date.

Other authority cited by Trustee is not persuasive. He cites *England v. Golden (In re Golden)*, 789 F.2d 698 (9th Cir. 1986), for the proposition that a court may look at the post-petition conduct of a debtor. As noted in *In re Combs*, 166 B.R. 417 (Bankr.N.D.Cal.1994), *Golden* is based on a peculiar temporal exemption statute and its holding is thus limited to its facts. The California exemption law at issue in *Golden* specifically provided that proceeds of the sale of a homestead are exempt only if reinvested within six months of a sale.

*Golden*, 789 F.2d at 699–700. The *Golden* court applied the California exemption law as written: to obtain the exemption, the debtors had to take certain action, which they failed to do. The exemption law itself contained a "sunset provision" requiring the court to look to facts occurring after the petition date to determine whether the exemption was available. Section 704.115 contains no such "sunset provision," and the holding of *Golden* is thus inapplicable. *See Combs*, 166 B.R. at 419–20.

Trustee also argues that California exemption law permits a court to consider post-petition use of property in determining whether that property is exempt. Section 703.100 of the California Code of Civil Procedure ("CCP § 703.100") states that the determination of whether property is exempt "shall be made under the circumstances existing at the earliest of the following times":

(1) The time of levy on the property.

(2) The time of the commencement of court proceedings for the application of the property to the satisfaction of the money judgment.

(3) The time a lien is created under Title 6.5 (commencing with Section 481.010) (attachment) or under this title.

Cal.Code Civ. Pro. § 703.100(a) (West 1987).[10] Subsection (b) of CCP § 703.100 permits a court "in its discretion" to take into consideration a change in the use of property if the exemption is based on the use of property and such use changed between the time of levy and the time of the hearing on the exemptions. *See* Cal. Code Civ. Pro. § 703.100(b). The existence of this statute does not change this panel's analysis. First, subsection (b) is not mandatory; a court is not required to take into consideration "changed factors."

---

9. In *Patterson v. Shumate*, 504 U.S. 753, 757, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court abrogated the holding of *Daniel* that an anti-alienation clause in an ERISA-qualified plan did not constitute a restriction on transfer enforceable under "applicable non-bankruptcy law."

10. No published decision exists where a bankruptcy court has applied this provision.

Second, the provisions of subsection (b) are part of the procedures and time frames of California enforcement of judgment and exemption law. Under California law, a debtor must claim his or her exemption and the levying party must then file an objection and motion for determination within ten days of service of the claim of exemption. *See* Cal.Code Civ. Pro. §§ 703.520 and 703.550. Unless continued by the court for good cause, the hearing on the claim of exemption shall be held not later than twenty days from the date the motion for determination was filed. *See* Cal.Code Civ. Pro. § 703.570. The hearing shall occur no later than two months of the levy.

In contrast, under bankruptcy law, the time between the date of levy (by analogy the petition date) and the hearing on an objection to exemption is indefinite. Objections to claims for exemptions must be filed within thirty days of the conclusion of the creditors' meetings. *See* Fed. R. Bankr.P. 4003(b). In some districts, trustees engage in the practice of continuing creditors' meetings from month to month, thereby avoiding the deadline for filing objections to exemptions. Even if the meeting is timely concluded and an objection is filed, the federal bankruptcy rules do not contain a provision requiring a prompt hearing on that exemption. Procedures vary among bankruptcy courts as to how and when the objections are brought on for hearing. Because bankruptcy law does not provide a mechanism for guaranteeing a prompt hearing on exemption objections, unlike California law, the procedures of subsection (b) of CCP § 703.100 simply cannot work in the bankruptcy setting. Otherwise, debtors and the bankruptcy process are exposed to indefinite administration of assets. While we must and do apply California substantive exemption law, we will not try to overlay California procedural devices into the bankruptcy exemption/objection process.

Finally and most importantly, bankruptcy law is clear that debtor's exemption rights are fixed as of the petition date, for the reasons set forth by the Supreme Court in *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924):

> When the law speaks of property which is exempt and of rights to exemptions, it, of course, refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors, and the trustee in other particulars are fixed.

*Id.* at 313, 45 S.Ct. 103. *See also Owen v. Owen*, 500 U.S. 305, 314 n. 6, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (the proper date for determining whether an exemption exists is the date of filing of the bankruptcy petition).[11] To the extent that the California exemption law attempts to establish a procedure that overrides the well-settled bankruptcy law regarding the date for determining an exemption, it is preempted.

The Supreme Court has held that "[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 73 L.Ed. 318 (1929) (noting that the intent of Congress in establishing uniform bankruptcy law necessarily excludes incon-

---

**11.** In *Owen*, the Supreme Court held that a judicial lien may be avoidable under section 522(f) even though the state exemption law deprived its debtors of homestead protection from preexisting liens. *Owen*, 500 U.S. at 313, 111 S.Ct. 1833 ("it is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created. *We have no* basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute (section 522) *contains.*") (emphasis added). In other words, while states may carve out their specific exemptions, the state exemption law must not conflict with a general policies underlying section 522, such as the date for determination of exemptions.

sistent state regulation). Of course, "Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely." *Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677, 683 (1st Cir.1999), *cert. denied,* 527 U.S. 1036, 119 S.Ct. 2394, 144 L.Ed.2d 794 (1999). Nonetheless, such deference does not permit a state to enact a procedural (as opposed to substantive) mechanism that defeats the long-standing bankruptcy principle that the property of the estate and exemptions are determined as of the petition date. To do so would wreak havoc with the uniformity of bankruptcy law and procedure, and would permit an unending opportunity for creditors and debtors to examine and contest post-petition actions of a Chapter 7 debtor. "As the Supreme Court recognized in discussing the interplay between § 522(f) and state exemption exceptions in *Owen,* the state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code." *Weinstein,* 164 F.3d at 683.

Because the retirement funds were controlled and held by a union retirement plan as of the petition date, the bankruptcy court did not err in declaring that the funds were fully exempt under section 704.115(a) and (b) of the California Code of Civil Procedure.

## B. *Most of The Retirement Plan Benefits Were Not Property of the Estate*

To the extent that the panel has affirmed the bankruptcy court's holding that the retirement funds were fully exempt, it does not have to address the issue of whether the funds were property of the estate. Nevertheless, the panel notes that the court's holding as to this issue was also correct.

When a bankruptcy petition is filed, an estate is created that is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). The Bankruptcy Code, however, excludes from property of the estate "any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate,* 504 U.S. at 758, 112 S.Ct. 2242 (referring to section 541(c)(2)).[12] The Ninth Circuit has held that a valid spendthrift trust created under state law can be excluded from the estate pursuant to section 541(c)(2). *See Ehrenberg v. Southern California Permanente Medical Group (In re Moses),* 167 F.3d 470, 473 (9th Cir. 1999). In this case, the Retirement Plan contained an anti-alienation provision restricting Debtor's ability to transfer his beneficial interests and the ability of third parties to levy upon Debtor's interests, as of the date of bankruptcy. Moreover, as of the petition date, Debtor did not exercise excessive control over the Retirement Plan; in fact, he exercised no control over it and did not have access to the plan's benefits until retirement (a post-petition act). Finally, the Debtor (as beneficiary) was not the settlor of the Retirement Plan; the plan was thus not "self-settled." Consequently, under California law, the Retirement Plan was a valid spendthrift trust (*id.* at 473) and the Debtor's interests (except for 25 percent)[13] in it as of the petition date were not property of the estate. *Id.*

Trustee argues the funds are property of the estate because they were removed from the spendthrift trust after the petition date and placed in the IRA. As of the petition date, however, the funds were contained in a spendthrift trust, and

**12.** Section 541(c)(2) provides that "[a] restriction on transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

**13.** *See* discussion at footnote 4.

the petition date is the relevant date for determining whether property is property of the estate. "If the property is excluded from the bankruptcy estate at the time of the bankruptcy filing, a subsequent change in its form does not bring it into the estate unless another provision of [section] 541(a) would capture it as a post-petition asset." *In re Bartholomew,* 214 B.R. 322, 328 (Bankr.S.D.Ohio 1997). This reasoning is analogous to that applied in cases where the post-petition transformation of exempt property does not restore the transformed property to the estate. As noted by the court in *Lowe v. Yochem (In re Reed),* 184 B.R. 733 (Bankr.W.D.Tex.1995):

> The practical implication is that [exempt] property is forever protected from the claims of pre-petition creditors, and is essentially removed from the bankruptcy process. [Citations omitted.]

> No change in the form or character of the exempt property should change this result. Nothing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property. If the debtor decides, as part of his fresh start, to sell the house, buy a Winnebago, and travel around the country from campground to campground with his wife and his dog, the statute appears to place no impediment in his path. True enough, the Winnebago may not be exempt from obligations he incurs after his discharge (depending on state law), but it should not be vulnerable to the satisfaction of any of the debtor's prepetition obligations. Were the rule otherwise, then estates could be reopened to administer such proceeds at virtually any time, robbing bankruptcy administration of any

sort of meaningful finality, and robbing the bankruptcy discharge of its efficacy. *Id.* at 738.

Trustee cites *Velis v. Kardanis,* 949 F.2d 78 (3d Cir.1991) in favor of his contention that the post-petition conduct of Debtor transformed the retirement funds into property of the estate. In *Velis,* the court considered a debtor's post-petition use of funds in his pension plan, Keogh plan and IRA in determining that those funds were not exempt. As the bankruptcy court correctly noted, however, *Velis* is not persuasive. To examine post-petition use of property that is not estate property as of the petition date defeats the concept of a "fresh start;" creditors and trustees would continually attempt to identify the use of otherwise non-estate property in an effort to acquire it for the estate.

Trustee also cites other cases in favor of his contention that Debtor's post-petition rollover of the retirement funds into the IRA brought the funds into the estate. All of these cases are distinguishable. Four of the cases [14] involved the pre-petition rollover of funds from an ERISA-qualified plan into an IRA; this case involves a post-petition rollover. Another case, *Rau v. Ryerson (In re Ryerson),* 739 F.2d 1423 (9th Cir.1984), did not involve funds generated by a spendthrift trust which would have been excluded from the estate initially. Instead, the court held that post-petition proceeds from a pre-petition contract were property of the estate.

Because the retirement funds were contained in a spendthrift trust as of the petition date, the bankruptcy court correctly held that at least 75 percent of the funds were not property of the estate (and would be fully exempt even if they were property of the estate). As discussed in section IV(A), the remaining 25 percent would be fully exempt.

14. The four cases include *In re Barshak,* 106 F.3d 501 (3d Cir.1997); *Eisenberg v. Houck (In re Houck),* 181 B.R. 187 (Bankr.E.D.Pa. 1995); *In re Mann,* 134 B.R. 710 (Bankr. E.D.N.Y.1991); and *In re Goldman,* 182 B.R. 622 (Bankr.D.Mass.1995), *aff'd,* 192 B.R. 1 (D.Mass.1996).

690

## V.  CONCLUSION

Because the retirement funds were fully exempt under California Code of Civil Procedure section 704.115, this panel AF-FIRMS the decision of the bankruptcy court.