**In re Peter Michael KONNOFF and Debra Eva Konnoff, Debtors.**

**Jill H. Ford, Chapter 7 Trustee, Appellant,**

**v.**

**Peter Michael Konnoff; Debra Eva Konnoff, Appellees.**

**BAP No. AZ–06–1139–DKPa.**

**Bankruptcy No. 05–10845–PHX–RJH.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 19, 2006.

Filed Nov. 14, 2006.

Allison M. Lauritson, Esq., Lane & Nach, P.C., Phoenix, AZ, for Appellant.

Gary R. Stickell, Esq., Attorney at Law, P.C., Phoenix, AZ, for Appellees.

Before: DUNN, KLEIN and PAPPAS, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The chapter 7 trustee, Jill H. Ford, appeals a final order of the bankruptcy court, entered on June 2, 2006, overruling her objection to certain exemptions claimed by the debtors, Peter and Debra Konnoff (collectively, the "debtors"), under Arizona law. Specifically, the trustee objected to the debtors' claimed exemption in proceeds from the prepetition sale of their residence because the exempt status of the proceeds would expire pursuant to a time limit within the Arizona homestead exemption statute. Relying on the Supreme Court's decision in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), which dealt with lien avoidance under 11 U.S.C. § 522(f), the bankruptcy court overruled the objection on the grounds that the time limitation in the Arizona homestead exemption statute was not binding in bankruptcy and that federal law did not permit postpetition changes to the exempt status of property.

For the reasons set forth below, we REVERSE.

### I. Facts

The facts are undisputed. On October 29, 2004, the debtors sold their home and later divided and deposited the net proceeds from the sale into two separate bank accounts.

On June 15, 2005, the debtors filed for bankruptcy relief under chapter 7.[1] In their schedules, the debtors listed the proceeds as assets and claimed the proceeds in each of the accounts as exempt. On October 11, 2005, the trustee filed an objection to the exemption claimed in the home sale proceeds in the two accounts.

On February 6, 2006, the court held a hearing on the trustee's objection. While conceding that the home sale proceeds were exempt as of the petition date, the trustee contended that the debtors' exemption in the sale proceeds would expire shortly because, under A.R.S. § 33–1101(C), the proceeds were only exempt for a period of 18 months after the date of the sale or until the proceeds were reinvested in another home, whichever period was shorter. As the debtors sold their home on October 29, 2004, the exemption in the sale proceeds would expire on or about April 29, 2006, allowing the estate to claim the remaining sale proceeds.

The debtors contended that postpetition disposition of or changes to the proceeds did not affect the exempt status of the proceeds. Rather, the nature and extent of their exemptions were determined as of the date of the filing of their bankruptcy petition.

On March 29, 2006, the bankruptcy court issued a published opinion, *In re Konnoff*, 341 B.R. 28 (Bankr.D.Ariz.2006), overruling the trustee's objection and concluding that the proceeds, exempt as of the petition date, remained exempt, notwithstanding the time limitation included in the Arizona homestead exemption statute.

The trustee timely appealed.

### II. Jurisdiction

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2). We have jurisdiction under 28 U.S.C. § 158(b)(1).

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date (October 17, 2005) of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, April 20, 2005, 119 Stat. 23.

### III. Issue

Whether the bankruptcy court erred in permitting the debtors, who claimed an exemption in proceeds from the pre-petition sale of their residence pursuant to Arizona law, to maintain their claimed exemption over the trustee's objection, notwithstanding the requirement under Arizona law to reinvest the proceeds in another residence within 18 months after the date of the sale in order to maintain the exemption.

### IV. Standard of Review

■ We review questions regarding the right of a debtor to claim exemptions as questions of law subject to de novo review. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000). "Whether property is included in a bankruptcy estate is a question of law also subject to de novo review." *Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000).

### V. Discussion

The facts of this Arizona exemption dispute are essentially identical to those presented for our decision in *Gaughan v. Smith (In re Smith)*, 342 B.R. 801 (9th Cir. BAP 2006). In *Smith*, we determined that the Ninth Circuit's decision in *England v. Golden (In re Golden)*, 789 F.2d 698 (9th Cir.1986), dictated a conclusion that once the 18-month time limit under A.R.S. § 33–1101(C) passed without reinvestment of the sale proceeds in a new homestead property, those proceeds lost their exempt character, and the trustee could claim them for distribution to creditors.

The bankruptcy court in this appeal ruled that the Supreme Court decision in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), effectively overruled *Golden*. That theory was not presented to us in *Smith*, which was not decided until nine days after the bankruptcy court decided the present case. On appeal, we disagree with the bankruptcy court about the necessary implications of *Owen*.

The bankruptcy court found that the debtors did not have to reinvest the proceeds from the prepetition sale of their residence into another residence and could maintain their claimed exemption in the proceeds, despite an 18–month time limitation under Arizona law. The bankruptcy court reasoned that, under the principles set out in *Owen*, the debtors' claimed exemption in the proceeds continued postpetition, even if the debtors did not reinvest the proceeds within 18 months, because the "built-in limitation" in Arizona's homestead exemption statute was not binding in bankruptcy, and federal law did not permit postpetition changes to the exempt status of property as of the petition date.

The bankruptcy estate consists of all legal and equitable interests of the debtor in property as of the date of the filing of the petition. 11 U.S.C. § 541(a)(1). A debtor may claim certain property as exempt from the claims of creditors. 11 U.S.C. § 522(b)(1). The Code has provided a list of certain property exemptions. 11 U.S.C. § 522(d). States may choose, however, not to participate in the federal exemption scheme and to limit their residents to exemptions available under applicable state and non-bankruptcy federal law. 11 U.S.C. § 522(b).

■ Where a state has elected to opt out of the federal exemption scheme, a debtor may exempt any property under state or local law that is applicable on the date of the filing of the petition. 11 U.S.C. § 522(b)(2)(A); *Golden*, 789 F.2d at 700. The facts of the case and the law, as they exist on the date of the filing of the petition, determine any exemptions claimed.

*Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 304 (5th Cir.2001); *In re Combs*, 166 B.R. 417, 419 (Bankr.N.D.Cal.1994).[2]

■ Arizona has opted out of the federal exemption scheme. A.R.S. § 33–1133(B) (West 2006).[3] Under Arizona law, the homestead exemption automatically attaches to a person's interest in identifiable cash proceeds from the voluntary or involuntary sale of his or her residence. A.R.S. § 33–1101(C) (West 2006). "The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter." *Id.* Accordingly, the Arizona homestead statute imposes a time limitation on the exempt status of proceeds from the sale of a residence. *In re Elia*, 198 B.R. 588, 599 (Bankr.D.Ariz.1996); *Gaughan v. Cavan (In re Strasser)*, 303 B.R. 841, 848 (Bankr.D.Ariz.2004) (in dicta).

The Ninth Circuit has held that where state exemption laws condition or limit the exempt status of property in ways that are more or less generous than the federal exemptions, such conditions or limitations must be respected. *Golden*, 789 F.2d at 700. In *Golden*, the debtor claimed an exemption in proceeds from the pre-petition sale of his residence pursuant to California law. Applying a plain meaning interpretation of California law, the Ninth Circuit held that the debtor lost his exemption in the proceeds, although exempt as of the petition date, because the California homestead statute required the debtor to reinvest the proceeds in another homestead within six months, which the debtor in *Golden* had failed to do. The Ninth Circuit stated that "[w]hen a debtor elects to claim an exemption under state law pursuant to 11 U.S.C. § 522, he is required to comply with the state law in effect at the time of the filing of his bankruptcy petition." *Id.* at 700.[4]

In *Smith*, which dealt with the very same time limitation in the Arizona homestead exemption statute at issue here, we recognized the continuing validity of *Golden*. *Smith*, 342 B.R. at 806–08. The bankruptcy court believed, however, that *Owen* set forth principles effectively overruling *Golden*.

*Owen* involved whether the provisions of a state law could limit a debtor's right to avoid a creditor's judicial lien on the debtor's homestead under § 522(f). In *Owen*, the creditor obtained a judgment against the debtor. At the time the creditor recorded the judgment, the debtor owned no real property. The debtor later purchased a condominium unit, to which the creditor's

---

**2.** *See also* the following Bankruptcy Act decisions: *Myers v. Matley*, 318 U.S. 622, 625, 63 S.Ct. 780, 87 L.Ed. 1043 (1943) (stating that "a homestead is exempt if, under the state law, it would be held to be exempt"); *White v. Stump*, 266 U.S. 310, 312, 45 S.Ct. 103, 69 L.Ed. 301 (1924) (stating that the Bankruptcy Act "makes the state laws existing when the petition is filed the measure of the [debtor's] right to exemptions").

**3.** The Arizona homestead exemption statute provides: "Notwithstanding subsection A, in accordance with 11 U.S.C. § 522(b), residents of this state are not entitled to the federal exemptions provided in 11 U.S.C. § 522(d). Nothing in this section affects the exemptions provided to residents of this state by the constitution or statutes of this state." A.R.S. § 33–1133(B) (West 2006).

**4.** At the time when the Ninth Circuit decided *Golden*, California had a homestead exemption provision similar to that of Arizona. Under the California homestead exemption law, in the event that the owner sold his or her homestead, the proceeds of the sale would be exempt for a period of six months after the sale. *Golden*, 789 F.2d at 699 (citing Cal. Civ.Code § 1265). This same homestead exemption is currently codified under Cal. Civ. Code § 704.960(a) (West 2006).

judgment lien attached. Initially, under Florida law, the condominium did not qualify as a homestead; a year later, Florida amended its homestead exemption statute to include condominiums. The Florida homestead statute provided that judgment liens could not attach to homestead property. However, the statute did not extend its protection to pre-existing liens that had attached to property before it acquired its homestead status. After filing for chapter 7 relief, the debtor moved to avoid the lien pursuant to § 522(f). The bankruptcy court denied the motion, and the district court and court of appeals affirmed that ruling.

The Supreme Court in *Owen* reversed and remanded, concluding that the debtor could avoid the judgment lien under § 522(f), even though Florida did not extend the protection of its homestead exemption statute to property subject to pre-existing liens. The Supreme Court held that the "built-in limitations" in state exemptions did not restrict the debtor's ability to avoid liens pursuant to the provisions of § 522(f).[5] However, in dicta, the Supreme Court stated that "[n]othing in subsection [522](b) (or elsewhere in the [Bankruptcy] Code) limits a State's power to restrict the scope of its exemptions; *indeed, it could theoretically accord no exemptions at all.*" *Owen*, 500 U.S. at 308, 111 S.Ct. 1833 (emphasis added).

Here, the bankruptcy court found that the Supreme Court in *Owen* "reached two interim conclusions" applicable to the instant case. 341 B.R. at 32. First, "even in an 'opt-out' state, the state's exemptions do not necessarily include all of their 'built-in limitations.'" *Id.* Second, " 'exempt property is determined "on the date of the filing of the petition," not when the

lien fixed.' " *Id.* (quoting *Owen*, 500 U.S. at 314 n. 6, 111 S.Ct. 1833.).

Applying these principles to the instant case, the bankruptcy court believed that *Owen* overruled *Golden*. The bankruptcy court acknowledged that in opt-out states, when a debtor claims an exemption under state law, the Code provides that the state law, applicable as of the petition date, determines the exemption. The bankruptcy court did not find this dispositive, however, in circumstances where the state law provided a time limitation on exemptions subject to postpetition effects, because preemptive federal law prohibits changing the status of exemptions, determined as of the petition date, based on a debtor's postpetition conduct.

 Although the language of *Owen* with respect to "built-in limitations" on state exemptions is ambiguous, the Supreme Court is clear that states have the authority to provide limited exemptions or not to provide exemptions at all. *Owen*, 500 U.S. at 308, 111 S.Ct. 1833. States have the authority " 'to create whatever exemptions they elect,' even if they are less inclusive (or more restrictive) than the exemptions afforded debtors by the federal exemption scheme." *Storer v. French (In re Storer)*, 58 F.3d 1125, 1128 (6th Cir. 1995) (quoting *Rhodes v. Stewart*, 705 F.2d 159, 163 (6th Cir.1983)). *See also Golden*, 789 F.2d at 700 (stating that federal courts have long recognized that state exemptions may be more or less generous than federal exemptions and that state exemptions need not be identical or comparable to federal exemptions).

 Of course, states do not have a carte blanche to place unlimited restrictions on exemptions; if the exemptions

---

**5.** In discussing "built-in limitations" in state exemption law, the relevant footnotes refer only to cases involving lien avoidance under § 522(f). *Owen*, 500 U.S. at 310 nn. 1–2, 111 S.Ct. 1833.

directly conflict with the Code, then the Code prevails. *See Owen,* 500 U.S. at 309–13, 111 S.Ct. 1833 (finding that the Florida homestead exemption directly conflicted with the Code in preventing the debtor from avoiding a preexisting lien pursuant to § 522(f)). But there is nothing in the Code that prohibits a state from imposing a time limitation as a condition to maintaining the exempt status of certain property. Unlike the Florida homestead exemption statute, which prevented the debtor from avoiding a pre-existing judgment lien altogether, though the Code explicitly provided for lien avoidance under § 522(f), the time limitation within the Arizona homestead exemption statute does not conflict with a specific provision of the Code nor does it abridge or abrogate the right of the debtors to claim an exemption. Rather, it requires the debtors to act affirmatively to *maintain* the exemption as claimed pursuant to the state law applicable as of the petition date. *See Smith,* 342 B.R. at 806–07.

█ Here, at the time the debtors filed for bankruptcy protection, the debtors had a right to and did, in fact, claim an exemption in their home sale proceeds under the state law applicable as of the petition date. However, Arizona law sets forth conditions to maintain the exemption. *See In re Earnest,* 42 B.R. 395, 399 (Bankr.D.Or.1984) (finding that the Oregon homestead exemption statute contained a time limitation clearly determinable as of the date of the filing of the petition); *see also Combs,* 166 B.R. at 420 (finding that the California homestead exemption analyzed in *Golden* required the debtor to change his circumstances in order to *preserve and perfect* his right of exemption and required the court

to consult facts occurring after the petition date). There is nothing necessarily inconsistent about such conditions with Code requirements.

By disregarding and eliminating the temporal limitation within the Arizona homestead exemption statute, the bankruptcy court created, in effect, a new federal common law exemption.[6] Under the bankruptcy court's analysis, the time limitation for reinvestment of homestead sale proceeds under the Arizona homestead exemption statute would be eliminated by the debtors' bankruptcy filing. As a result, two different exemption arrangements for Arizona debtors would be available, depending on whether a person files for bankruptcy or not: non-bankruptcy debtors would be required to reinvest the proceeds from the sale of their homestead within 18 months of the sale in order to maintain their exemption, while those debtors who filed for bankruptcy could exempt the proceeds remaining from the sale of their homestead indefinitely. In other words, Arizona debtors in bankruptcy would have the right to retain up to a $150,000 exemption in cash home sale proceeds forever.

Such an interpretation appears to be inconsistent with Arizona's right under § 522(b) to opt out of the federal exemption scheme. *See Storer,* 58 F.3d at 1128–29 (stating that Congress did not intend to preempt state exemption law and, through § 522(b)(1), empowered states to create whatever exemptions they elect, recognizing the concurrent legislative power of states to enact laws governing exemptions); *Earnest,* 42 B.R. at 399 ("This court finds nothing in the Bankruptcy Code that requires or allows it to fragment

---

**6.** If the state does not opt out of the federal exemption scheme, under § 522(d)(1), the exemption available for a homestead would be $18,450. Under § 522(d)(5), the exemption available for any property would be $975, plus up to $9,250 of any unused amount of the exemption provided under § 522(d)(1). 11 U.S.C. §§ 522(d)(1)-(5).

the state law in this manner to grant a benefit to the debtors they would not have received if they had not filed bankruptcy."). The bankruptcy court's interpretation of what the Supreme Court did in *Owen* gives greater weight to the less than clear phrase "built-in limitations" on state exemptions than that language can bear in the absence of further elaboration by the Supreme Court or the Ninth Circuit. Without such elaboration, we decline to depart from our recent decision in *Smith*.[7]

## VI. Conclusion

 Although the petition date determines the exemption rights of the debtor, where the state has opted out of the federal exemption scheme pursuant to § 522(b), it is the facts of the case and the state law *applicable on the petition date* that controls a debtor's exemption rights. 11 U.S.C. § 522(b)(2)(A). By allowing them to opt out of the federal exemption scheme, Congress has granted states the prerogative to determine the scope of, and limitations on, the exemptions their residents may claim in a bankruptcy case. *Owen*, 500 U.S. at 308, 111 S.Ct. 1833; *Golden*, 789 F.2d at 700; *Storer*, 58 F.3d at 1128–29. Nothing in the Code prohibits a state from restricting its exemptions. *Owen*, 500 U.S. at 308, 111 S.Ct. 1833. As long as the limitations do not conflict with the Code, such limitations, applicable as of the petition date, must be enforced. Nothing in the Code requires us to "fragment the state law" to allow the debtors a continued exemption in home sale proceeds after the exemption expires under Arizona law. *Earnest*, 42 B.R. at 399. Accordingly, we REVERSE.

PAPPAS, Bankruptcy Judge, concurring.

I can join in the result of the majority's decision because this Panel is bound to follow its prior decision in *Gaughan v. Smith (In re Smith)*, 342 B.R. 801 (9th Cir. BAP 2006). *See Palm v. Klapperman (In re Cady)*, 266 B.R. 172, 181 n. 8 (9th Cir. BAP 2001), *aff'd*, 315 F.3d 1121 (9th Cir.2003); *Salomon N.A. v. Knupfer (In re Wind N' Wave)*, 328 B.R. 176, 181 (9th Cir. BAP 2005). In *Smith*, the Panel decided that the very same temporal limitation on the duration of the Arizona homestead exemption at issue here was effective in bankruptcy cases. In coming to that conclusion, *Smith* relied upon the Ninth Circuit's interpretation of a very similar provision in the California homestead statute in *England v. Golden (In re Golden)*, 789 F.2d 698 (9th Cir.1986). And despite the bankruptcy court's thoughtful decision here, I disagree that *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), overruled or otherwise provides a basis to avoid the conclusion reached by the Ninth Circuit in *Golden*. Thus, I think we are bound to follow *Golden* and *Smith* and to reverse the decision of the bankruptcy court.

But while I respect binding precedent, for the same reasons expressed by Judge Klein in his concurrence in *Smith*, 342 B.R. at 809, I am troubled that our decision in *Smith*, and now our conclusion here, is constructed upon a flawed foundation. I think *Golden's* premise—that state law restrictions on exemptions that arise from facts occurring after the filing of a bankruptcy case are effective—deserves reconsideration. Instead, I adhere to the notion that exemption rights should be determined, finally, based upon the facts existing on the date the bankruptcy petition is filed. To conclude otherwise means

---

7. Although we conclude that respect for precedent obliges us to follow *Golden* and *Smith*, we do not pretend that the underlying substantive questions are easy. *See Smith*, 342 B.R. at 809 (Klein, J., concurring).

the debtor's rights in a bankruptcy case are necessarily in limbo until that case concludes. This in turn may motivate a trustee to postpone closing the case as long as there is any prospect that the debtor's circumstances may change.

Here, the debtors sold their homestead prior to bankruptcy, and there is no dispute that on the date they commenced their bankruptcy case, the sale proceeds were exempt. But our holding in *Smith* nonetheless required the debtors to purchase a new home within the statutory time in order to maintain the exempt status of the proceeds—something they presumably have failed to do. And the trustee kept the debtor's bankruptcy case open to ensure that they did so. It seems inconsistent with the debtor's entitlement to a fresh start that, as here, the debtors must wait over a year after filing for bankruptcy relief to know the extent of their exempt property.

Would *Golden* and *Smith* prohibit the debtors from using the house sale proceeds before expiration of the 18–month window to, say, pay nondischargeable debts, like taxes? And what about a debtor who desires to sell an exempt homestead shortly after the bankruptcy case is filed to use the funds to pay newly incurred obligations, like medical bills? These are two hard questions raised, but not answered, by *Golden* and *Smith*.[8]

All sorts of state law exemptions are subject to all sorts of conditions which must be satisfied based upon the facts as they exist when the exemption is claimed, not later. For example, under Arizona law, tools used in a debtor's trade or profession are exempt. A.R.S. § 33–1130 (West 2006) (providing an exemption for "tools and equipment of a debtor *used in a commercial activity, trade, business* or *profession* ") (emphasis added). Under *Golden* and *Smith,* if six, 12 or 24 months after filing for bankruptcy, a debtor changes occupations, can the trustee then seize the formerly exempt tools for liquidation?

Congress has allowed the states to limit the exemptions available in bankruptcy to their residents in § 522(b)(1). But in § 522(b)(2)(A), the Code requires that the state law "applicable on the date of the filing of the petition" control in determining what exemptions a debtor may claim in a bankruptcy case. To me, while the former provision allows states to dictate what property is exempt, the latter provision instructs that the extent of exempt property is to be determined with reference to the facts as they exist on the date of the bankruptcy filing, not some later, unspecified date. That such a determination may give bankruptcy debtors additional rights as compared to those not in bankruptcy is nothing new given the remedial purposes of the bankruptcy laws. Bankruptcy is all

---

**8.** Under the Arizona homestead law, A.R.S. § 33–1101(C), it seems clear that a debtor is entitled to use the proceeds from the sale of an exempt homestead for any purpose, and not just for reinvestment in another homestead, during the 18–month safe harbor period. Assuming a debtor has such an unfettered right on bankruptcy day, could the trustee defeat a debtor's request to have the funds abandoned from the bankruptcy estate? 11 U.S.C. § 554(b) (authorizing bankruptcy court to order the trustee to abandon, upon request of an interested party, any property that "is of inconsequential value and benefit to the [bankruptcy] estate"). If the trustee can frustrate the debtor's freedom to spend these funds, requiring that they be held hostage to reinvestment only in a homestead to preserve the estate's "contingent, reversionary interest in the sale proceeds", *see Smith,* 342 B.R. at 808, Arizona debtors in bankruptcy are actually worse off than their non-bankruptcy counterparts.

about the modification of creditors' state law rights.

And so I concur, but out of respect for precedent only.